[No. 10737.   Department Two.   September 11, 1913.]

PETER CASASSA *et al.*, *Appellants*, v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—CLAIMS—DAMAGES—REMOVAL OF LATERAL SUPPORT—NECESSITY OF CLAIMS. Under Seattle city charter, art. 4, § 29, requiring all claims for damages against the city to be filed within thirty days, a claim for damages by the removal of lateral support is a prerequisite to the action, where the city had condemned the right to make the change in grade and to take land sufficient for a one to one slope, and paid the compensation, and the damages resulted from the inadequacies of the plan to protect the remaining property from sliding.

SAME—CLAIMS—ITEMS. Under Seattle city charter, art. 4, § 29, requiring claims for damages, to "contain all the items of damages claimed," a claim for removal of lateral support through defective plans for a regrade is not sufficient to permit of recovery of the cost of an effort to save houses on the lots from sliding, where the claim failed to specify the same as an item of damage.

SAME—NOTICE—WAIVER. Knowledge of city officials of an item of damage claimed does not dispense with the necessity of including the same in the claim filed with the city.

[1]Reported in 134 Pac. 1080.

SAME—NOMINAL DAMAGES.  The sole object of an action to recover for the removal of lateral support being the recovery of substantial damages, failure to prove the same is failure to sustain the substance of the issue; and the cause will not be reversed for failure to give nominal damages.

SAME — PUBLIC IMPROVEMENTS — REMOVAL OF LATERAL SUPPORT— MEASURE OF DAMAGES—INSTRUCTIONS.  In an action against a city for the removal of lateral support, the measure of damages is the final effect of the slide on the market value of the lots; and hence it is proper to instruct that there can be no recovery if they were worth more after the slide than they were before.

SAME—INSTRUCTIONS.  In an action against a city for the removal of lateral support of lots, left by the city at a one to one slope, and which slid because defective plans for the regrade failed to properly protect the lots, it is error to instruct on the subject of damages that the jury could consider the lots as they were before the slide, the nature of the soil and its tendency to slide, and the possibility of excavating it, and then determine its value after the slide; since the slide was inevitable owing to the inherent sliding tendency of the soil.

Appeal from a judgment of the superior court for King county, Tallman, J., entered July 25, 1912, upon the verdict of a jury rendered in favor of the defendant, in an action in tort.  Reversed.

*Walter A. Keene* and *E. H. Guie*, for appellants.
*James E. Bradford* and *Ralph S. Pierce*, for respondent.

ELLIS, J.—Plaintiffs originally brought this action against the city of Seattle and its contractors to recover damages for the sliding of the soil of their lots, caused by the removal of lateral support in regrading certain streets.  On plaintiffs' evidence, the action was withdrawn from the jury and dismissed.  On appeal, we sustained the dismissal as to the contractors, but remanded the cause for trial as against the city. For a statement of the facts, reference is made to our opinion on that appeal.  *Casassa v. Seattle*, 66 Wash. 146, 119 Pac. 13.  On a trial pursuant to that decision, the jury returned a verdict for the defendant.  From a judgment thereon, the plaintiffs have again appealed.

I.   It is first asserted that the court erred in excluding
evidence as to the amount expended by the appellants in an
effort to save the houses on the lots from destruction.   The
claim for damages presented to the city council did not in-
clude this as a specific item of damage.   The trial court, for
that reason, excluded this evidence.   Art. 4, § 29 of the
charter of Seattle requiring the presentation to the city coun-
cil and filing with the clerk of all claims for damages against
the city within thirty days after such claims accrued, provides
that the notice of claim shall "contain the items of damages
claimed."   For the full text of this charter provision and the
character of claims which have been held to be included within
its purview, reference is made to the following decisions:
*Jurey v. Seattle*, 50 Wash. 272, 97 Pac. 107; *International
Contract Co. v. Seattle*, 69 Wash. 390, 125 Pac. 152; *Id.*,
74 Wash. 662, 134 Pac. 502; *Cole v. Seattle*, 64 Wash.
1, 116 Pac. 257, Ann. Cas. 1913 A. 344, 34 L. R. A.
(N. S.) 1166.   Under these decisions, the presentation and fil-
ing of the claim was an indispensable prerequisite to the main-
tenance of this action.   They unequivocally hold that the
charter provision applies to all claims for damages.   This
view does not impinge our decision in the recent case of *Kin-
caid v. Seattle*, 74 Wash. 617, 134 Pac. 504, 135 Pac. 820, in
which we held that, where property was taken or damaged
without any antecedent condemnation, it was none the less a
taking in the exercise of a sovereign function, hence not tor-
tious.   For that reason, we held that the city could not impute
to its own lawful act a tortious character in order to avoid lia-
bility by pleading the failure of the plaintiff to present and file
a claim pursuant to the charter as a defense to the plaintiffs'
action to assess the damages for such lawful taking which
should have been assessed in advance.   On that ground, we
held that to require the presentation of the claim as a pre-
requisite to the action in such a case would violate § 16, art.
1 of the state constitution, providing that property shall
not be taken for public use without compensation.   The de-

cision in *Kincaid v. Seattle* in effect overrules the decision in *Postel v. Seattle*, 41 Wash. 432, 83 Pac. 1025, cited by respondent, since in that case there had been no prior condemnation for the right to grade the street. Although in the *Postel* case, as shown by the briefs, the grading of the street was an original grading and first improvement of the street, and there was no claim that the grade was unreasonable or that the work was not properly done, still, as the law was at that time, the city could not damage private property by such original grading of the streets, though the grade was reasonable and the work properly done, without first condemning for the right to so damage. This court so held on a rehearing in *Fletcher v. Seattle*, 43 Wash. 627, 86 Pac. 1046, 88 Pac. 843. It is manifest, therefore, that in the *Postel* case, under the doctrine which we have just announced in the *Kincaid* case, the filing of a claim was unnecessary.

The same conclusion, however, does not follow in the present case. This is neither an original grade, damage from which would be now held without injury under *Ettor v. Tacoma*, 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061, nor a change from an original grade, for which no condemnation had been made. In the case now before us, the right to change the street grade, make the cut, and take land sufficient for a one to one slope, was determined and the compensation therefor assessed before the work was done. The damages now claimed resulted from the inadequacy of the plan of the improvement to protect the remaining property from sliding. The claim is not for the taking of some additional definite or definable part of the lots for making a sufficient slope, but for the removal of lateral support without providing, in the plan and execution of the work, for a retaining wall or a sufficient slope to prevent the sliding. This is clear, since the damage now claimed would have resulted, and to the same extent, had the one to one slope been entirely confined in the first instance to the street itself without any invasion or taking of appellants' property for a slope. This case is, in

principle, a replica of *Hinckley v. Seattle*, 74 Wash. 101, 132 Pac. 855. There condemnation was made in advance, but the plan of the improvement resulted in damage to adjacent lots. In that case, though no mention of the fact is made in the opinion, a sufficient claim was, as the record shows, actually presented and filed.

The claim in the case in hand was clearly insufficient to permit a recovery for the item in question. The record shows that some expenditure was contemplated by the appellants before the claim was filed. Though the amount may not then have been known to appellants and hence need not have been stated, the fact was known to them and should have been stated as an item, giving the proper official body of the city notice, that it might act upon it or investigate as to the probable feasibility of the measures proposed to save the houses. While the destruction of the houses was a direct result of the slide of which notice was given in the claim, and proof of their value was therefore permitted, the futile expenditure in trying to save the houses was not such a direct or necessary result.

Nor did the fact that the city officials supervising the work had knowledge of the measures being taken to save the houses dispense with the necessity for filing a valid claim.

"The city council is the only authority which, under the organic law of the city, can take cognizance of such claims, and it necessarily follows that it is the only authority which can waive compliance with the charter. . . It would be illogical to hold that any other person or body could waive for, or create an estoppel against, the city except that body which the law has designated to receive and act upon the claim." *Cole v. Seattle*, 64 Wash. 1, 116 Pac. 257, Ann. Cas. 1913 A. 344, 34 L. R. A. (N. S.) 1166.

The evidence was properly excluded.

II. It is next claimed that the court erred in instructing to the effect that the plaintiffs could not recover unless the jury found that the slide reduced the market value of the property, and in giving the same instruction in another form,

to the effect that, if the jury found that the property was as valuable on the market as it would have been had no slide occurred, the plaintiffs could not recover.  It is urged that the appellants were entitled to nominal damages in any event, as in cases of ordinary trespass on realty, and that the jury should have been so advised.  But the sole object of the action was to recover damages, not to establish a right of property or a personal right, or to defend personal character.  The failure to prove substantial damages would, therefore, be a failure to sustain the substance of the issue.  In such a case, the cause will not be reversed merely that nominal damages may be assessed.

"It is only where the verdict of the jury will determine some property or personal right, having value of itself as a right, that the verdict must be taken regardless of the question whether the amount returned is substantial or nominal." *Woodhouse v. Powles*, 43 Wash. 617, 86 Pac. 1063, 117 Am. St. 1079, 8 L. R. A. (N. S.) 783.

See, also, *Commercial Inv. Co. v. National Bank of Commerce*, 36 Wash. 287, 78 Pac. 910; *Johnson v. Cook*, 24 Wash. 474, 64 Pac. 729.

III.  The giving of the following instruction is also assigned as error:

"I will make it plain to you, gentlemen of the jury, even if you find, that the houses were damaged or totally destroyed, if you further find that the lots, after the sliding were more valuable than before, and were so much more valuable that even taking into consideration the houses were damaged, that still the lots were of a greater value than they were before, why then you would disregard of course, the value of the houses entirely, in making up your verdict."

It is argued that the jury was thus permitted to offset supposed benefits arising from the lowering of the grade of the lots by the slide nearer to the street level, against the alleged damages.  But why not?  The claim was for damages by reason of the slide and its final effect on the market value of the property must necessarily be the criterion.  *Ulrick v. Dakota*

*Loan & Trust Co.*, 2 S. D. 285, 49 N. W. 1054. If it bene-fited by adding to that value, then it did not damage. This is not a case of trespass by an intentional wrongdoer, but one of damages, if any, resulting from a lawful act. The city could have condemned for the right to damage the property to the extent which the slide damaged it. In fact, the appel-lants argue that it should have done so. It is obvious, there-fore, the same rule of damages should now be applied as would have been applied had the city so condemned. In such a case, the benefits would, of course, have been offset against the damages. It is simply a question of ultimate damages by reason of the slide, nothing else. The instruction was prop-erly given.

IV. Finally, it is contended that the court erred in giving the following instruction:

"The plaintiffs' claim is based on the allegation that the city did not maintain their lots in this condition; that they would have had a certain value if they had been so sloped back and retained at an elevation of fifty to sixty feet above the street. In determining the value of the lots in that condi-tion, you will take all of the surrounding conditions into con-sideration, such as the nature of the soil, the sliding tenden-cies, if any, inherent in it, the possibility of excavating it, and the uses to which it could be practically put in such con-dition. After determining the value of the property in this state, you will then turn to the consideration of the value of the property as it existed after the slide."

This instruction is palpably erroneous. The "nature of the soil" and its inherent "sliding tendencies" were the very elements which admittedly caused the slide. These were con-ditions which the city in planning the regrade should have taken into consideration and guarded against, either by mak-ing a greater slope or by building a retaining wall. By not taking these elements sufficiently into consideration to pro-vide against their certain and immediate effect, the city and not the lot owners assumed the risk of the resulting slide. The plan and character of the improvement was for the city

to determine.   The property owner was bound to acquiesce
in its plan.   It could not cast the risk of its own miscalculation
upon the property owner.   *Hinckley v. Seattle*, and *Kincaid
v. Seattle, supra*.   Owing to the inherent sliding tendency of
the soil, the slide was inevitable as soon as the cut at a one
to one slope was made.   There was, then, a potential slide,
because of the character of the soil, which became an actual
slide almost immediately.   The instruction authorized the
jury to compare the value of the lots in these two conditions,
which were in effect the same condition, with each other, in
determining the damages.   Obviously, where the jury, in
making a comparison of value between the lots standing up
and the value of the lots after the slide, was permitted to take
into consideration, as affecting the value as of lots standing
up, the very thing which would not permit them to stand,
namely, the inherent sliding tendency of the soil, it was in
effect permitted to compare the value after the slide with it-
self.   The difference would, of course, be nothing, and the
damage from the slide, so computed, nothing.   This instruc-
tion was inconsistent with, and, so far as any one can know,
may have nullified the effect of the following clearly correct
instruction, and several others embodying the same thought:

"If you find from the evidence that the said property was
as valuable, on the market, after the slide, as it would have
been had it not slid but had stood at a one to one slope, then
the plaintiffs cannot recover."

The question was a simple one, and should have been cov-
ered by a few simple instructions.   The real issue was ob-
scured by the instruction complained of.   The appellants
may not have been damaged, but they were entitled to an un-
equivocal statement of the correct measure of damages.

The judgment is reversed, and the cause is remanded for
a new trial.

CROW, C. J., MAIN, MORRIS, and FULLERTON, JJ., concur.