[No. 12278.  Department One.  June 12, 1915.]

## HALLIE STEWART et al., Appellants, v. OMER FITZSIMMONS et al., Respondents.[1]

HOMESTEAD—SELECTION—FROM COMMUNITY PROPERTY—RIGHT OF SURVIVING HUSBAND. The act of 1895, Rem. & Bal. Code, § 558, providing for the selection of a homestead by the husband or other head of a family, by executing and acknowledging a declaration to be filed of record, authorizes the husband, after the wife's death, to select a homestead for the benefit of himself and family out of the community property, vesting title in him in fee; and the act supersedes that part of Rem. & Bal. Code, § 1465, requiring a "setting aside" of a homestead by the probate court where none had been claimed by "the head of a family in his lifetime."

APPEAL—REVIEW—FINDINGS. Findings upon conflicting evidence will not be disturbed on appeal, unless it can be said that they were not sustained by the preponderance of the evidence.

CONSTITUTIONAL LAW—DUE PROCESS — HOMESTEADS — RIGHT TO— SELECTION—STATUTES. The selection of a homestead under the act of 1895, Rem. & Bal. Code, § 558, by the filing of a declaration for record, whereby title is vested in the head of a family, is not a taking or deprivation of the property of the heirs without due process of law; since the declaration does not shut off judicial inquiry, and the state may provide the method of asserting the right of homestead without requiring that it be by way of judicial proceeding, as long as opportunity to be heard in the courts is open.

HOMESTEAD — SELECTION — EFFECT ON TITLE OF HEIRS — DESCENT AND DISTRIBUTION—STATUTES. Construing in pari materia the acts of 1895, pp. 197, and 109 (Rem. & Bal. Code, §§ 1366, 528 et seq.), the former vesting the title to real estate in the heirs upon the death of the ancestor without decree of distribution, and the latter defining a homestead and providing for the manner of selection, the acts are not inconsistent, but the heirs take the property cum onere, and subject to existing laws and the right of the surviving heirs to claim a homestead out of the property.

STATUTES—TITLE AND SUBJECTS. Rem. & Bal. Code, § 561, of the homestead act, defining the character of the title acquired by the claimant, is sufficiently germane to the title "an act defining a homestead and providing for the manner of the selection of the same;" and hence is not unconstitutional as determining the method of descent of property without expressing the subject in the title.

[1]Reported in 149 Pac. 659.

Appeal from a judgment of the superior court for Garfield county, Miller, J., entered February 13, 1914, upon findings in favor of the defendants, in an action for partition and an accounting, tried to the court. Affirmed.

*France & Helsell*, for appellants.

*Kuykendall & McCabe* and *G. W. Jewett*, for respondents.

CHADWICK, J.—This action was brought by the appellants to secure the partition of certain property, alleged to be the community property of Peter A. Peterson and Jane H. Peterson, his wife. Peter A. Peterson filed on a government homestead in July, 1881. He married Jane H. Smelcer in September, 1881. The family settled on the land in October, 1881, a cabin having been erected and some fencing built previous to that time. Jane H. Peterson died in June, 1903. Her estate was administered by her surviving husband. Peter A. Peterson died in August, 1910. N. O. Baldwin is the executor of his last will and testament.

It is the contention of appellants, first, that the land is community property; second, that, if it is not, Peter A. Peterson and those claiming under him are estopped because of the fact that Peter A. Peterson, when acting as administrator of the estate of his deceased wife, listed the land as community property and administered upon it as such. The contentions of appellants are met by respondents by the claim that the property was the separate property of Peter A. Peterson; that there is no estoppel; and, furthermore, that the land was claimed as a homestead by Peter A. Peterson after the death of his wife, and became his separate property in virtue of the statutory declaration of homestead. No declaration of homestead had been made in the lifetime of Mrs. Peterson. The property claimed in the declaration of homestead consisted of one hundred and sixty acres entered as a government homestead, and forty acres out of one hundred and sixty acres which the Petersons had acquired as a preemption from the government. The trial judge found

the one hundred and sixty acres to be the separate property of Peter A. Peterson; that the forty acres, being a part of their preemption, was community property and subject to the claim of homestead. He accordingly denied the prayer of appellants' complaint and rendered a decree quieting title in the respondents, who are devisees of Peter A. Peterson, subject to the administration proceedings now pending.

The judges are not in entire harmony with reference to the holding of the trial judge that one hundred and sixty acres government homestead was the separate property of Peter A. Peterson. We will not, therefore, review the facts which lead up to this holding, but content ourself with discussing the claim of a statutory homestead, which, in the opinion of all the judges participating in this case, is decisive. We shall treat the property as community property, as contended by appellants.

Jane H. Peterson died in June, 1903. Appellants take the position that, no claim of homestead having been filed in the lifetime of Mrs. Peterson, the property became subject to the orders of the court having jurisdiction of the estates of decedents, and that a homestead could not be set off except by order of the court after notice and hearing. Rem. & Bal. Code, § 1465 is relied on.

"If the head of a family in his lifetime had not complied with the provisions of the law relative to the acquisition of a homestead, the widow, or the child or children, may comply with such provisions, and shall be entitled, on such compliance, to a homestead as now provided by law for the head of a family, and the same shall be set aside for the use of the widow, child or children."

It is further contended that, unless the claim of homestead is supported by such an order after due proceedings and notice, it would result in depriving the heirs of property without due process of law, under Rem. & Bal. Code, § 1366, which vests title in the heir immediately upon the death of the ancestor. The statute is as follows:

"When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration, and any other charges for which such real estate is liable under existing laws. No administration of the estate of such decedent, and no decree of distribution or other finding or order of any court shall be necessary in any case to vest such title in the heirs or devisees, but the same shall vest in the heirs or devisees instantly upon the death of such decedent." (L. '95, p. 197, § 1.)

Section 1465 was a part of the old probate practice act passed in 1854. The purpose was to give a widow and minor children the benefit of a homestead when none had been claimed by "the head of a family in his life time." That statute may well be called a widow's homestead. It required a compliance with the homestead law and a "setting aside" by the court for "the use of the widow, child or children." It is not in harmony with the spirit of the community property laws. It implies a title in the "head of the family" at the time of his death, and a title in the widow and child or children after it is set aside; whereas, a homestead is most often taken out of community property, in which the widow has the same interest as the head of a family and to which she has a right absolute as against her child or children. The unfitness of this statute and the situations possible under it no doubt led the legislature to meet the demand for a more certain and equitable law.

In 1895, the legislature passed a new and complete act, making the act of declaring a homestead a matter entirely independent of any proceeding in court, either before or after declaration.

"In order to select a homestead, the husband or other head of a family, or in case the husband has not made such selection, the wife must execute and acknowledge, in the same

manner as a grant of real property is acknowledged, a declaration of homestead, and file the same for record." L. '95, p. 113, § 30; Rem. & Bal. Code, § 558.

It was the purpose of the act of 1895 to fix title in the community, and, on the death of either spouse, in the survivor. This statute was construed in *In re Feas' Estate*, 30 Wash. 51, 70 Pac. 270. After adverting to the spirit and history of the law, the court, speaking through Judge Hadley, said:

"We think it is the manifest spirit and intention of the law that a husband may, after his wife's death, select a homestead from the community property for the benefit of himself and family."

In *Stewin v. Thrift*, 30 Wash. 36, 70 Pac. 116, we held that all that part of Rem. & Bal. Code, § 1468 which vested any title in a child or children, was superseded by the act of 1895; that the tenure depended upon the character of the property from which the homestead was selected.

"If it is selected from community property in the lifetime of both spouses, it vests in the survivor in fee, and becomes his or her separate property; if it is selected from separate property, it goes, on the death of the person from whose property it was selected, to the heirs or devisees of such person, subject to the power of the court to assign it for a limited period to the family of the decedent."

If that part of the old law was superseded, and a survivor can claim a homestead under the act of 1895 after the death of his spouse, and title depends upon the character of the property and the act of 1895 alone, it follows that all parts of § 1465 which require a "setting aside" are superseded, and appellants' rights, if any, depend solely upon an answer to the questions, (a) whether the property was the separate property of Jane H. Peterson, (b) what was the value of the property at the time of the declaration, and (c) does a declaration of homestead by the survivor of a homestead work a deprivation of property without due process of law?

Inasmuch as appellants assert, and we have assumed, that the property was community property, we shall pass the first proposition without discussion.

The testimony as to value was conflicting. There is evidence to sustain the finding of the trial judge that it did not exceed the sum of $2,000 at the time the declaration was made. The land is not what is known as first-class land in the county where it is situated. Out of the 200 acres, less than seventy acres is classed as farm land, the balance being pasture land. It is true that present values are shown to be largely in excess of the value found by the trial judge, but there is testimony to show that there had been a strong depression in prices of land, followed by a sharp raise in values, between the years 1903 and 1909. We are not prepared to say that the finding of the court in this respect is not sustained by a preponderance of the evidence.

Nor do we think that appellants have been deprived of property without due process of law. The right to declare a homestead is not an absolute right in the sense that a declaration shuts off proper judicial inquiry. In *Fairfax v. Walters*, 66 Wash. 583, 120 Pac. 81, we held the question of value to be open to inquiry, whatever the antecedent proceedings may have been. In its broad sense, due process means an opportunity to be heard in a court of competent jurisdiction upon any question affecting the personal or property rights of a citizen. A trial according to the "course, mode and usages of the common law." *Hoke v. Henderson*, 4 Dev. L. (15 N. C.) 1, 25 Am. Dec. 677. Stated in the alternative, a denial of due process means a denial of a right to be heard upon an issue of fact or law. If an opportunity to be heard remains, there is no lack of due process.

The state, in the exercise of its sovereign power, may define homesteads and provide the method of asserting the right of homestead. It is immaterial upon which particular ground the exercise of power is made to rest. It has the right or, as it is generally referred to, the duty to allow a

citizen the privilege of claiming a homestead against which the claims of creditors will not run. Having that power, it is necessarily within the power of the state to fix the character of the title under which the property shall be held. It is not necessary that the state should provide for the exercise of this right by way of judicial proceeding. It is enough that all who have an adverse interest shall have an opportunity to be heard. Opportunity in this connection means that the doors of the courts are open. If they are, there can be no complaint because the legislature has seen fit to define a procedure which is not dependent upon a court proceeding.

The right of Peter A. Peterson to claim a homestead being referable to the sovereign power of the state, the case falls within the principle announced by this court in holding that the state, or any of its instrumentalities, having power to exercise the right of eminent domain, would not be ousted as for trespass after taking property and before ascertaining the damages to be paid; this, upon the theory that a right to take is a sovereign right and that the remedy in damages was open to the aggrieved party under the forms, modes and usages of the common law. *Kincaid v. Seattle*, 74 Wash. 617, 134 Pac. 504, 135 Pac. 820; *Casassa v. Seattle*, 75 Wash. 367, 134 Pac. 1080.

In *Crosier v. Cudihee*, 85 Wash. 237, 147 Pac. 1146, it was contended that there had been a denial of due process. We said:

"The fact that appellant is in court seeking the validity of his lien against that of respondents is a sufficient answer to his contention that he has been deprived of his property without due process of law."

In *Weber v. Doust*, 81 Wash. 668, 143 Pac. 148, we quoted from McGehee on Due Process of Law, p. 52, holding that a judicial proceeding in a formal court is not essential to due process; that a hearing subsequent to the exercise of summary process is sufficient.

It is further contended that the title was vested in appellants as heirs upon the death of the ancestor, in virtue of § 1366 of the code. This section of the code was adopted at the 1895 session of the legislature, Laws of 1895, p. 197, a few days after the homestead law, Laws of 1895, p. 109, was passed. The two acts may be sustained without violating the provisions of either. When construed *in pari materia*, it seems clear that the legislature intended to vest title in the heirs, subject to existing laws and the right of the surviving spouse to assert a homestead out of the property. Laws fixing the descent of property are usually general in their terms. Property descends subject to existing laws and the right of the state to charge it with the debts of the deceased person and with the support of his family or a part of his family. The fact that the state has seen fit to fix the title in a general way at the time of the death of an ancestor instead of by decree of distribution creates no greater right or interest in the heir than he had before the act was passed. He takes the property under the statute relied on, *cum onere.* All legal charges and incumbrances, whether resting in contract or in statute, are paramount to his claim of title. The legislature must have had the claim of homestead in mind when passing the act, for title is made subject to "debts, family allowance, expenses of administration, *and any other charge for which such real estate is liable under existing laws.*"

Counsel finally contend that § 561 of the code, being section 33 of the act of 1895, is unconstitutional in that the title of the act is not sufficiently comprehensive to sustain it. After quoting the title, "An act defining a homestead, and providing for the manner of the selection of the same," they say:

"Section 561 does something quite different than provide for the manner of the selection of a homestead. It determines the method of descent of community real property, a subject not at all germane to the defining of a homestead and the selection of the same."

We nevertheless are constrained to believe that the questioned section refers to matters that are germane to the title. The words "providing for the manner of the selection of the same" might be omitted so far as the question raised by counsel is concerned. The words "an act defining a homestead" are sufficiently comprehensive to sustain the section of the act defining the title under which a homestead is to be held. The legislature could not well define a homestead without providing for the manner of its selection and the tenure under which it is held. The object of all homestead laws is to make provision for the head of a family, and an act fixing and defining the character of the title does no violence to any of the statutes of descent.

Finding no error, the judgment of the lower court is affirmed.

MORRIS, C. J., PARKER, MOUNT, and HOLCOMB, JJ., concur.