[No. 12708.   Department Two.   November 10, 1915.]

W. H. Marks, *Respondent*, v. The City of Seattle, *Appellant*.[1]

Municipal Corporations — Damages to Property — Removal of Lateral Support—Accrual of Action—Measure of Damages. Where a regrade of a street resulted in a progressive slide which, after some months, caused the removal of plaintiff's lateral support, and his right of action did not accrue and he could not file a claim against the city until his property had been actually invaded, on accrual of the action he could recover his whole damage, regardless of the fact that the approaching slide was a depreciating menace affecting the market value of the property for more than thirty days immediately prior to the filing of the claim; hence his damages cannot be measured by reference to the market value immediately before and after the invasion of the property or within thirty days prior to filing the claim.

Evidence—Argumentative Questions—Assumption of Facts. Argumentative questions not based upon anything then in evidence are properly excluded.

Appeal—Review—Harmless Error—Evidence. It is not prejudicial to exclude evidence that was later admitted, or where the same had been previously covered.

Damages—Values—Opinion Evidence—Assuming Facts. In an action for the removal of lateral support by a progressive slide, upon an issue as to the value of the property, it is proper, on cross-examination, to ask an expert as to his opinion of the value on a specified date, assuming that the slide had progressed to a point indicated by the evidence of the adverse party on that date.

Evidence—Parol Evidence—Consideration. It is admissible to show by parol that an assignment of a claim in suit, absolute in form, was made as part of the consideration and as additional security for an extension of time upon a mortgage, and to show the true nature of the transaction.

Judgment—Res Judicata—Evidence—Admissibility. Where no evidence was offered in support of a defense that a judgment in condemnation was *res judicata* of the matters in issue in the present action, the judgment in the former action and judgment roll are properly excluded.

[1]Reported in 152 Pac. 706.

APPEAL—REVIEW—HARMLESS ERROR—EVIDENCE. It is not preju-
dicial error that certain evidence was excluded, where the only fact
which it was competent to prove was assumed by the court in its in-
structions to the jury.

DAMAGES—REMOVAL OF LATERAL SUPPORT—INTEREST. In an action
for the removal of lateral support by a progressive slide, resulting
finally in the destruction of buildings, interest cannot be allowed on
the value of the buildings prior to the time they were destroyed.

APPEAL—DECISION—MODIFICATION—COSTS ON APPEAL. Where il-
legal interest included in a verdict can be calculated and deducted,
the correction will be made on appeal, without remanding for a new
trial, or costs to the appellant who failed to correct the matter below
where it was called to his attention.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered December 21, 1914, upon the
verdict of a jury rendered in favor of the plaintiff, in an ac-
tion in tort. Affirmed.

*James E. Bradford* and *Howard M. Findley,* for appel-
lant.

*Tucker & Hyland* and *Willett & Oleson,* for respondent.

ELLIS, J.—This is an action to recover damages to the
plaintiff's property caused by the removal of its lateral sup-
port. It is alleged that the plaintiff is the owner of lots
six and seven, in block forty, of C. D. Boren's addition to Se-
attle; that James F. McNeill, Lulu C. McNeill and Ellen
Leonora Price, as heirs at law of W. A. McNeill, deceased,
have an interest in the property, but having refused to join
as plaintiffs, are made defendants; that in 1907, the city, by
ordinance, changed the grade of Fifth avenue and Fifth
avenue south in the city of Seattle; that, pursuant to that
ordinance, the city made a cut of about thirty feet along
Fifth avenue west of plaintiff's property, and took no pre-
caution to prevent plaintiff's property from breaking away
because of such cut; that as a result of the removal of its
lateral support, the soil in the lots west of the plaintiff's
property and between it and Fifth avenue broke away and

slid, the slide reaching plaintiff's property on or about June 15, 1913, and finally damaged the plaintiff's lots and destroyed the buildings thereon, all to plaintiff's damage in the sum of $85,487.50; that on July 9, 1913, plaintiff filed his claim for damages with the city comptroller.

The defendant, by answer, admitted the passage of the ordinance changing the grade of the street, admitted the making of the cut, but denied the other matters alleged in the complaint. As a first affirmative defense, it set up the condemnation suit by the city condemning for the right to change the grade of the street; averred that the plaintiff herein was a party to that suit, and pleaded the judgment in that suit as a bar to this action. As a second affirmative defense, it was averred that the plaintiff negligently failed to preserve his property or to take any steps to minimize the damage.

The plaintiff, by reply, admitted the allegations of the answer touching the condemnation suit, but denied that the judgment therein adjudicated the damages sought to be recovered in this action, and denied the matters contained in the plaintiff's second affirmative defense.

The plaintiff's lots abut on Sixth avenue and Alder street, and along their westerly end is a sixteen foot alley. Between this alley and Fifth avenue lie lots known as the Dose property. The surface of the plaintiff's lots was approximately seventy feet above the established grade of Fifth avenue. In regrading Fifth avenue the city made a cut of about thirty feet, thus removing the lateral support of the Dose lots. The soil in these gave way and slid into Fifth avenue, thus in turn eventually removing the lateral support of plaintiff's lots and causing them to slide and fall away. The first excavation of Fifth avenue was made in 1911. The slide soon after developed as a progressive slide. There was a sharp conflict in the evidence as to when it actually invaded the plaintiff's property. The evidence introduced on behalf of the defendant was to the effect that as early as November 20, 1912, the slide had invaded the plain-

tiff's lots; that on March 25, 1913, the break had extended well into these lots, and that between that date and November 28, 1913, there was a further breaking and falling away. The plaintiff's testimony was positive to the effect that the first appreciable invasion of his lots took place in the latter part of June, 1913, prior to which time only a few bucketfuls of earth had fallen away. The plaintiff and a number of expert real estate men called by him placed the value of the lots prior to June 9, 1913, at from $40,000 to $60,000, and at about $5,000 at the time of the trial. The plaintiff placed the value of the three houses upon the lots which were destroyed by the slide at $14,314. There was realized from the wreckage of the buildings $185. The defendant's witnesses placed a value on the lots before the slide at from $15,-000 to $42,000, and after the slide at $15,000. Though not so stating in direct terms, the record shows that the defendant's witnesses in fixing the value, whenever directed to a time before the slide had actually invaded plaintiff's lots, took into consideration the depreciation caused by the approaching slide.

The plaintiff introduced in evidence his claim of damages, which was filed with the city comptroller on July 9, 1913, and also, a stipulation between himself and the heirs of W. A. McNeill, whereby they agreed that, in case of a verdict in favor of the plaintiff, judgment should be entered for the plaintiff and these heirs jointly. In this connection the defendant offered a copy of an assignment by the plaintiff to W. A. McNeill of whatever claim he had or might have against the defendant for damaging the property. The plaintiff objected on the ground that the copy was not the best evidence and offered the original, to which was attached a defeasance showing that the assignment was made merely as collateral to a mortgage on the property, which at the time of the assignment was held by McNeill. This defeasance was executed by George E. Wright, as attorney in fact for McNeill. Counsel for the defendant objected to its intro-

duction on the ground that there was no showing of Wright's authority to execute the defeasance. Thereupon Wright took the stand and testified in substance that, at the time the assignment was made, he was acting as attorney for McNeill, who was a nonresident; that McNeill held a mortgage upon the property in question which had been placed in Wright's hands for attention; that plaintiff desired an extension of time on the mortgage; that McNeill was willing to make the extension providing Marks would assign to him the claim against the city for damages as collateral security to the mortgage and in consideration of the extension. Wright also identified a letter ratifying this arrangement, which he testified he had received from McNeill. Thereupon the assignment, defeasance and letter were received in evidence.

The defendant introduced in evidence the judgment roll in the condemnation suit condemning for the right to change the grade of Fifth avenue. It offered no evidence tending to sustain its first affirmative defense of *res judicata,* nor any evidence tending to sustain its second affirmative defense setting up plaintiff's negligence and failure to take steps to minimize the damages. Counsel for the defendant, in open court, abandoned and withdrew the defense of *res judicata.* Upon motion of the plaintiff, both of the affirmative defenses were withdrawn from the jury. Upon motion of the plaintiff, the judgment roll in the condemnation proceeding was stricken from the evidence. At appropriate times, the defendant moved for a directed verdict and for a new trial. Both of these were denied. The jury returned a verdict in favor of the plaintiff for $27,865, with interest from June 9, 1913, at six per cent, amounting in all to $30,428.57, for which judgment was entered. The defendant appealed.

While counsel for the appellant does not make his position entirely clear, we gather from the points raised upon the evidence and upon the instructions that he claims that the respondent's recovery should have been confined to such damages, whether resulting from actual invasion of his property

or from the slide while it was merely an approaching slide, as have occurred since the filing of the claim with the city comptroller and thirty days immediately prior thereto. His principal argument seems to be based upon the theory that any depreciation in value of the lots occasioned by the approaching slide antecedent to the thirty days immediately prior to the filing of the claim should be taken into consideration in determining the difference between the market value of the lots before the property had been actually invaded by the slide and at the time of trial, which difference was admittedly the measure of damages to the plaintiff's lots exclusive of the buildings. This, apparently on the theory that, under the rule announced in *Jorguson v. Seattle*, 80 Wash. 126, 141 Pac. 334, following the case of *Casassa v. Seattle*, 75 Wash. 367, 134 Pac. 1080, the damages recoverable for a progressive slide are limited to those occurring after the filing of the claim against the city and thirty days prior to such filing. In both of those cases, however, the property had actually been invaded by the slide, which had progressed to a considerable extent within the property before any claim was filed. No question of depreciation of value by reason of an approaching slide which had not yet invaded the property was either involved or discussed in those cases.

The appellant admits that, in actions of this kind, a cause of action does not accrue until the slide has actually invaded the damaged property, and that in law no damage has accrued to the property owner by reason of an approaching slide until it invades his property, though, as a matter of fact, the market value of the property may have been depreciated by the approaching slide. This is clearly the correct view. It follows that the respondent here could not have been required to file a claim for damages until his lots had actually been invaded, because until then no cause of action had accrued. It further follows that any depreciation in the market value of the lots occasioned by the approach of the slide cannot be segregated from the damages ultimately resulting from the

actual invasion of his property by the slide, merely be-
cause a potential, though not an actual, damage had arisen
as a discernible condition prior to thirty days before the
claim was filed.    It would be manifestly unfair and illog-
ical to take as a measure of damages the difference be-
tween the value immediately prior to the first invasion of
his lots as diminished by the threatened destruction from the
approaching slide and the value of the property at the time
of the trial, on the theory that the depreciation had occurred
more than thirty days before he filed his claim.    That would
be to punish the claimant for not filing a claim before he had
.any cause of action, hence before he had the right to file it.
Clearly, if the respondent's property was first actually and
appreciably invaded by the slide within thirty days prior to
the filing of his claim, he is entitled to recover for the whole
damage caused by the slide, which then, for the first time, ac-
crued as a cause of action, regardless of the fact that prior to
that time the approaching slide was a depreciating menace.
This necessarily follows from the holding of this court in
*Smith v. Seattle*, 20 Wash. 613, 56 Pac. 389, where it was
said that:

"In estimating the value of plaintiff's property, they [the
jury] should eliminate from their calculations any deprecia-
tion in the property caused by the approaching slide, provid-
ing, of course, such slide resulted from the failure of the city
to furnish suitable lateral support.    And, in this connection,
the fact that the slide began to approach plaintiff's property
upwards of two years prior to the commencement of the pres-
ent action would make no difference.

"We think there is no merit in the respondent's contention
that the statute of limitations had run against plaintiff's
cause of action, or the further contention that her claim was
not filed within six months after the injury occurred."

There is nothing in our decision in the *Jorguson* case or in
any other decision of this court holding to the contrary.    It
is thus manifest that the controlling question of fact as bear-
ing upon the ultimate question of damages was as to when in

fact the respondent's property was first invaded by the slide. As we have seen, the evidence on this point was sharply conflicting. The question was therefore one for the jury. It was evidently resolved in favor of the respondent.

The respondent testified that the market value of his lots prior to the first day of June, 1913, assuming that they would stand, was $60,000. On cross-examination he was asked the following question:

"On the first day of June, 1913, the lots having prior to that time slid, the slide having touched the lots, having encroached upon the lots as far back as November, 1912, so that in the spring of 1913 the lots had been further invaded by this slide and that the top of the slide was extending further eastward up the hill so that on the first of June, 1913, the slide had extended so that it had reached the northwest corner of the large, red house designated as 'B' and had, in fact, extended under the northwest corner of that house and that there was a vertical drop of at least twenty-five feet at that point; the slide having so encroached upon the property, I would ask you to state, then, what, in your opinion, would be the fair, cash market value?"

This was objected to as being argumentative and not based upon anything then in evidence. The objection was sustained. This is assigned as error. The question was clearly argumentative, and it is true that it was not based upon any facts then in evidence. We find no error in its exclusion. Moreover, the respondent was subsequently asked the following question:

"Assuming, Mr. Marks, then, that the conditions of the property were such and the happenings to the property had been such for some time previous to June 9, 1913, that a reasonable buyer and a reasonably prudent man who, looking at the property, would have reason to believe that these particular lots were going to continue to slide and break farther up the hill, what, in your opinion, would be the fair, cash, market value?"

The respondent answered to the effect that if the prospective purchaser thought the lots were going to slide, he

probably would not purchase at any price, but that if he thought that they were not going to slide, he would pay $60,-000 for them if he wanted them. This question and answer cover practically the same thing called for in the foregoing question the exclusion of which is complained of.

On further cross-examination the respondent was asked the following question:

"In other words, then, if a buyer should visit these lots, on the 9th of June and, by reason of the things which had already happened to these particular lots previously, he had reason to believe that the lots would further slide and he did so believe that they would, he would have paid no more for them on that date than he would pay for them now; is that your answer?"

An objection on the ground that the question embraced damages which might have been occasioned by the approaching slide was sustained. This is also assigned as error. Assuming that the question was properly interpreted by the objection, with which interpretation counsel for the city took no issue, the objection was properly sustained. In any event, the prior question had covered the same ground and was answered by the respondent as we have noted. There was no error in excluding its repetition.

On cross-examination of one of the appellant's witnesses who testified as to values, counsel for respondent asked what in his opinion was the probable value of the property on June 9, 1913, assuming that the property would stand on a line indicated as that shown by the appellant's evidence as the line on the lot to which the slide had progressed on that day. The appellant assigns as error the refusal of the court to sustain an objection to that question. There was no error in this. The question was based upon facts of which there was then some evidence before the jury, and was reasonably calculated to elicit information bearing on the damages produced by the slide considered as a progressive slide after its invasion of respondent's property.

A claim of error is also based upon the fact that the court admitted parol evidence to show that the assignment of the respondent's claim of damages to McNeill was made as a part of the consideration and as additional security for an extension of time on the mortgage held by McNeill. There was no error in this. Had the mortgage itself been in the form of an absolute deed, the same question as that here presented would have been involved. In such a case, parol evidence is always admissible to show that a deed absolute on its face is intended as a mortgage between the parties. *A fortiori* is this true where, as here, the question is only collaterally in issue. The evidence shows that the assignment was made in connection with the extension of time on the mortgage and as collateral security in connection with the same transaction. We are clear that the court committed no error in permitting the real nature, consideration and purpose of the assignment to be proved by parol evidence, notwithstanding the absolute form of the assignment. Moreover, the heirs of the assignee, the parties in interest at the time of the trial, were parties to the action and had stipulated that the respondent might prosecute the action. They were, therefore, estopped to question any judgment which might be rendered. This eliminates all interest which the city could have had in the assignment. The assertion that the admission of this evidence impinged the provisions of Rem. & Bal. Code, § 1211 (P. C. 81 § 1027), is without merit. Neither of the parties to this action sued or defended as executor or administrator of any deceased person, or as guardian or conservator of the estate of any insane person.

Finally, it is claimed that the court erred in striking from the evidence the judgment and files in the prior condemnation suit and afterwards instructing on the theory that such suit had been brought. We find no error in this. The allegations of the answer setting up the bringing of the condemnation suit were admitted in the reply. The respondent had admitted that he was a party to that suit. These ad-

missions formed sufficient basis for the assumption of the fact that the suit had been brought, found in the court's instructions. The appellant, having offered no evidence tending to show that the judgment in the condemnation suit was *res judicata* of the question of damages involved in this action, the judgment roll in the condemnation suit met no useful purpose as evidence in this action and merely encumbered the record. It was properly stricken.

The appellant, however, argued that evidence of the condemnation suit was necessary as showing the necessity on the respondent's part to file a claim for damages, which would not have been necessary had there been no antecedent condemnation, citing *Casassa v. Seattle*, 75 Wash. 367, 134 Pac. 1080, and *Jorguson v. Seattle*, 80 Wash. 126, 141 Pac. 334. The court, however, instructed the jury to the effect that every person seeking to recover damages such as was claimed in this case is required to file with the city comptroller a sworn claim for damages within thirty days from the time the claim for such damages accrued. The court thus assumed the only fact which the stricken evidence was competent to prove after the abandonment of the defense of *res judicata*. It is obvious that the city was not prejudiced by being thus relieved of the necessity of proving a fact which it might otherwise have been required to prove. Moreover, as we have seen, the fact of the antecedent suit for condemnation was admitted by the reply.

There are many other criticisms of the court's instructions. We have examined the instructions with care. We are satisfied that they are invulnerable to any objection raised either here or in the lower court, save in one particular. Under the court's instructions, the jury was permitted to render a verdict in a lump sum for the injury to the lots and the value of the buildings, with interest on the entire amount from June 9, 1913. The buildings, however, were not destroyed till November, 1913. Interest should not have been permitted on the damages assessed for the loss of the buildings from

June 9, 1913. In the discussion of the proposed instructions, between the court and counsel for both sides, this was called to the court's attention by respondent's counsel. The court suggested the submission of an instruction to the jury to find separately the damage to the lots and the damage to the buildings and the date when the buildings were destroyed. Counsel for neither side expressed their willingness that this course be pursued, and counsel for the appellant, so far as his abstract shows, made no request for any instruction on the subject. The error, however, can easily be corrected without any harm to the appellant, as suggested in the respondent's brief, by simply calculating interest on the highest value fixed by any witness as the value of the buildings from June 9, 1913, to November 29, 1913, the date upon which the buildings were finally condemned. The highest value placed upon the buildings by any witness was $14,314. Interest thereon from June 9, 1913, to November 29, 1913, amounts in round numbers of $405. Deducting this from the amount of the judgment as entered, $30,428.57, leaves $30,-023.57, for which amount the judgment should be affirmed as of the date when it was entered. The appellant, having requested no instruction nor offered any solution of the difficulty when the matter was called to the court's attention, should not recover costs on this appeal.

We have not overlooked the rule recently announced in *Wright v. Tacoma*, 87 Wash. 334, 151 Pac. 837, in which case we held that interest on unliquidated claims cannot be allowed prior to judgment except where the amount of the claim is ascertainable by mere mathematical computation or by reference to some fixed standard. That point, however, not having been raised either here or in the lower court, we would not now be warranted in considering it as applied to the claim here involved.

With the above modification, the judgment is affirmed.

Morris, C. J., Main, and Fullerton, JJ., concur.