[No. 13784. Department One. February 7, 1917.]

THE COUNTY OF YAKIMA, *Respondent*, v. OLAF OLSON *et al.*, *Appellants.*[1]

EMINENT DOMAIN—COMPENSATION—RIGHT OF WAY—MEASURE OF DAMAGES. In proceedings to condemn a right of way for a drainage ditch, in which the damages were assessed after the work had been constructed, the measure of damages is the value of the property taken, together with all damages to the remainder, whether traceable to proper or negligent construction, regardless of the location of the property, from which is to be deducted the special benefits to the remaining property.

SAME—DAMAGES—EVIDENCE — ADMISSIBILITY. In proceedings to assess the damages for the condemnation of a right of way for a drainage ditch, evidence as to the maintenance of a railway fill that affects only a third party should be excluded as confusing the issue.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered April 18, 1916, upon the verdict of a jury awarding damages in condemnation proceedings. Reversed.

*Parker & Holden,* for appellants.

*William B. Bridgeman,* for respondent.

CHADWICK, J.—Appellants are the owners of certain lands and a building equipped as a cannery in the town of Granger.

[1]Reported in 162 Pac. 987.

To drain some 7,800 acres lying to the north and east of this property, enlarged drainage district No. 2 was organized under chapter 176, Laws of 1913, p. 611 (Rem. Code, § 4226-1 *et seq.*). The area to be drained included the town of Granger and outlying districts.

The main ditch, which was constructed before this action was begun, was approximately 50 feet wide and 12 feet deep. It crossed appellants' property. Prior to the construction of the new system of drainage, the territory was drained by what was called the "old ditch," which was a natural gully and of much smaller capacity. Below and abutting appellants' property, the tracks of the Oregon-Washington Railway & Navigation Company crossed the line of the ditch. A culvert, with a capacity of 350 second feet, was designed to carry the waters of the ditch through the fill under the railroad track.

In the spring of 1916, the district was flooded and the culvert through the Oregon-Washington Railway & Navigation Company's fill proved inadequate to carry the drainage water. The fill formed a dam and, as a result, appellants' property was flooded until the fill gave way and allowed the excess water to escape. Subsequent to this flood, and after the completion of the enlarged drainage system, an order of necessity was entered and a jury impaneled to ascertain appellants' compensation and damages for the appropriation of the right of way across their property.

Gross damages in the sum of $600, less benefits to the extent of $150, were awarded. A judgment for $450 and a decree of appropriation were entered.

We find merit in only two of the many assignments of error.

On the question of determining the gross damages to appellants' property, the trial judge instructed as follows:

"Second: The determination of the amount, if any, the present cash market value of the part of respondent's said

land not taken has been decreased by said drainage district acquiring the right to maintain and operate a so-called new ditch over said strip of land in its present condition on the said strip, and also by the right to maintain and operate as a part of said ditch the so-called pipe, if any outside said strip, provided you shall be convinced that the maintenance and operation of said pipe as the sole means of carrying the water over the space it covers is, in view of the surrounding conditions, negligence by the drainage district in the sense I shall hereinafter define such negligence; but unless you shall be so convinced, you will not consider the decrease, if any, in the value of the part not taken caused by the right of the drainage district to maintain such pipe, if any, for said purposes outside said strip, because respondents cannot legally complain of the pipe's operation outside their own land unless it was negligently done or planned. Said decrease in value, if any, so ascertained by you I shall hereafter refer to as the decrease in value of the property not taken by the appropriation of said strip to ditch purposes."

This instruction eliminates all question of damage to appellants' remaining property resulting from the construction and operation of that part of the drainage ditch which does not abut appellants' lands, unless there was negligence. The trial judge apparently had in mind two kinds of damage which may result from proper construction by the condemner: First, damage traceable to some part of the condemner's project in direct physical contact with the property affected; and second, damage resulting from "the pipe's operation outside their [appellants'] lands." The latter element was proscribed.

We do not understand this to be the law. Where, as in the case at bar, damages are assessed after the works have been constructed, we think the proper measure of gross damages is the value of the part taken, together with all damages to the remainder, whether traceable to proper or negligent construction, and regardless of the location of that part of the condemner's property which is alleged to have been the proximate cause of the damage. From the gross damage, when so

determined, should be deducted the special benefits to the remainder. Lewis, Eminent Domain (3d ed.), §§ 691-821.

This court considered the question of the proximity of the source of damage in *Wendel v. Spokane County*, 27 Wash. 121, 67 Pac. 576, 91 Am. St. 825. In laying out a county road, the dam of a lake was cut, permitting the waters to flood the adjoining country.

"Respondent says that this damage, if any was caused, was caused over seven miles from the roadbed. It makes no difference whether the damages were sustained seven miles or seven feet from the roadbed. It might be a little more difficult to prove that the action of the county at that distance was the proximate cause of the injury, but that is a question which will be submitted to the discretion of the jury. The contention of the respondent that the county cannot be held responsible for injuries occurring off or beyond the roadbed resulting from the building of the road cannot be sustained by either reason or authority. . . .

"It is insisted that there is no allegation of carelessness or negligence in the complaint. No such allegation is necessary. If the allegations of the complaint are true, it is the taking of private property for public use without compensation, and falls within the prohibition of the constitution (art. 1, § 16) so often construed by this court. And it makes no difference whether it was done *negligently* or *carefully*. The taking is what the constitution prohibits. *Brown v. Seattle*, 5 Wash. 35 (31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161); *State ex rel. Smith v. Superior Court of King County*, 26 Wash. 278 (66 Pac. 385)."

Error is also assigned in the admission of a stipulation to the effect that the fill of the Oregon-Washington Railway & Navigation Company would not be replaced by the Drainage District. The maintenance of the fill would seem to be a matter for the railway company, and the admission of this stipulation would only confuse the issues.

Reversed and remanded with instructions to grant a new trial.

ELLIS, C. J., MORRIS, MAIN, and WEBSTER, JJ., concur.