[No. 19964. Department Two. April 21, 1927.]

WONG KEE JUN et al., Respondents, v. THE CITY OF SEATTLE, Appellant.[1]

[1] EMINENT DOMAIN (64)—MUNICIPAL CORPORATIONS (565)— TAKING OR INJURING PROPERTY—ALTERATION OF GRADE OF STREET —CLAIMS AGAINST CITY—NATURE OF CLAIMS TO BE PRESENTED. Where a city in making an improvement, removes lateral support, causing slides, whether acting voluntarily or involuntarily, there is such a taking or damaging of private property without first making compensation, in violation of Const., Art. 1, § 16, as to give rise to an action therefor, without the necessity of filing any claim against the city under the state statute or the ordinances of the city.

Appeal from a judgment of the superior court for King county, Jones, J., entered January 12, 1926, upon

¹Reported in 255 Pac. 645.

the verdict of a jury in favor of the plaintiffs. Affirmed.

*Thomas J. L. Kennedy* and *Ray Dumett,* for appellant.

*Patterson & Patterson* and *James M. Gephart,* for respondents.

Tolman, J.—Respondents by this action seek recovery of damages to their real property, alleged to have been caused by a slide resulting from the removal of lateral support by the city in its regrade of certain adjacent streets some years before. Their claim for damages was filed with the city on December 1, 1923, and the defendant city, by demurrer, by appropriate motions and by requested instructions and exceptions to instructions given, sought to limit the plaintiff's right of recovery to those damages which may have been sustained within a period beginning thirty days prior to the filing of the claim. On all these matters the trial court ruled adversely to the city, the case was submitted to a jury, a verdict in favor of plaintiffs in the sum of $975 was returned, and from a judgment on the verdict the city has appealed.

[1] The errors assigned all go to the single question of whether respondents' property has been taken and damaged in contravention of their constitutional rights, or whether the city's acts were of a tortious nature only, or such as would be actionable only after the filing of a claim as provided by the city charter and by the statute. Both sides cite and rely upon previous decisions of this court which they argue are decisive, and there seems to be a condition of confusion and uncertainty which requires an examination of all that has heretofore been said, with a view of plainly and clearly establishing, if that be possible, a rule by which

litigants and trial courts may in future determine into which class a given case may fall.

*Peterson v. Smith,* 6 Wash. 163, 32 Pac. 1050, involved the appropriating of land for a county road. Chief Justice Dunbar said:

"Under the constitutional guaranty, the owner of the land appropriated in this case by the county could not be compelled to present a claim for damages. He can remain quiet and be assured that before his property is condemned the county must ascertain his damage, and either pay it to him or pay it into court for his benefit; . . ."

The gist of the holding is that these damages must be ascertained in court in a proceeding instituted for that purpose and may not be submitted to road viewers, to be arbitrarily passed upon by them.

*Askam v. King County,* 9 Wash. 1, 36 Pac. 1097, involved the then drainage law of the state, and that law was held unconstitutional because it made no provision to have the damages incident to the taking of private property assessed and compensated for before the land was taken. *Peterson v. Smith, supra,* is relied upon and followed, and no other or different principle is enunciated in the case.

*Snohomish County v. Hayward,* 11 Wash. 429, 39 Pac. 652, is concerned with the validity of the then statutes relating to public dikes and drains, which were held to be unconstitutional as in violation of § 16, art. I. *Askam v. King County* and *Peterson v. Smith, supra,* are relied upon and followed. *Skagit County v. Stiles,* 10 Wash. 388, 39 Pac. 116, is also cited as sustaining the principle.

*Seanor v. Board of County Comm'rs,* 13 Wash. 48, 42 Pac. 552, passed upon the act of March 15, 1893, providing for the appropriation of right of way for the

construction of county roads, and that act was held to be in conflict with the section of the constitution heretofore cited. Again, each of the cases hereinbefore referred to were cited and relied upon and their doctrine reaffirmed. Other questions were involved not here pertinent.

In *State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 Pac. 385, it was held that the right to light, air and access necessary to the use of a lot abutting upon a public street is property of the owner within the meaning of the constitution, and not to be taken except in the manner provided by the constitution. It appears that the relator sought to enjoin the Seattle Electric Company from building a trestle and elevated railway in front of his property, alleging that the structure cut off access and interfered with his light and air. Much of the attention of the court is given to the question of procedure, but after disposing of that question, this court held that the rights referred to were appurtenant to the lot and formed an integral part of the estate, whether the legal title to the street was in private individuals or in the public. Cases from outside this state are cited, and the case of *Brown v. Seattle,* 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161, is quoted from and relied upon, as is also *Peterson v. Smith, supra.*

*Postel v. Seattle,* 41 Wash. 432, 83 Pac. 1025, calls into question, apparently for the first time, the provision of the city charter of Seattle requiring all claims for damages to be filed with the city clerk, etc. It appears that, in that case, the appellant owned certain lots in the city of Seattle, and the city passed an ordinance providing for the grading of the streets upon which these lots fronted, and the work was done pursuant to the ordinance. Deep cuts were made in front of appel-

lant's property and when completed his lots were left from fifteen to thirty feet above the surface of the streets, thus cutting off access to them except from the rear through a narrow alley over a steep grade. The work was completed on October 3, 1904, and on March 16, 1905, the appellant presented to the city council and filed with the clerk a claim for damages, which was rejected. The action was thereupon brought to recover damages caused by the change of grade. The trial court sustained a demurrer to the complaint, and the owner appealed. The court quotes the city charter requiring claims for damages against the city to be presented within thirty days from the time the claims accrue, and it is there said:

"With regard to the first question, we think there can be but little doubt that the charter provision requires claims of this character to be presented to the city council and filed with the clerk. . . . . . True, other portions of the section would seem to be more appropriate to claims of another character than this, but this cannot be held to do away with the general requirement. . . . the general provision requiring claims for damages to be presented is applicable to all claims, and can be followed in every instance."

*Scurry v. Seattle,* 8 Wash. 278, 36 Pac. 145; *Born v. Spokane,* 27 Wash. 719, 68 Pac. 386, and *Ehrhardt v. Seattle,* 40 Wash. 221, 82 Pac. 296, are cited, and it is squarely held that there is no distinction between such a case as this and one involving personal injuries, and therefore the claim should have been filed within thirty days.

Judge Rudkin dissented upon the theory that the charter provision was only intended to apply to claims for damages arising from defects in the streets or other places which the city is obliged to keep in repair, saying:

"Any other construction in my opinion renders the charter provision unreasonable and unconstitutional."

The majority seems not to have considered the constitutional question; possibly it was not directly raised.

*Farnandis v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A. (N. S.) 1086, was an action for damages to buildings by the sinking of the earth caused by the construction of a railway tunnel under lands adjacent to the plaintiff's buildings, the damage being caused by the removal of lateral support or the shaking of the earth by blasts, and not by any increased downward or lateral pressure upon the soil by the buildings. The opinion cites authorities from other states, and *Parke v. Seattle*, 5 Wash. 1, 31 Pac. 310, 32 Pac. 82, 34 Am. St. 839, 20 L. R. A. 68; *Peters v. Lewis*, 33 Wash. 617, 74 Pac. 815, and *Smith v. St. Paul, M. & M. R. Co.*, 39 Wash. 355, 81 Pac. 840, 109 Am. St. 889, 70 L. R. A. 1018, and says:

"The effect of our decisions, as above stated, is to hold that for a physical injury or direct invasion of property rights, damages are recoverable under the provisions of the constitution. . . . It follows, of course, that the liability does not depend upon the degree of care or skill used to prevent damage."

*Smith v. Spokane*, 54 Wash. 276, 102 Pac. 1036, was an action to recover for damages to plaintiff's property caused by the removal of lateral support by grading of the street upon which the property abutted. *Postel v. Seattle, supra,* was cited and followed, in a *per curiam* opinion.

In *Hummel v. Peterson*, 69 Wash. 143, 124 Pac. 400, which was an action to recover damages for removal of lateral support, it was held that damages may be recovered for the removal of lateral support by an excavation made by an adjoining landowner, regardless of

negligence in making the excavation, in view of the constitutional provision (§ 16, art. I). *Farnandis v. Great Northern R. Co., supra,* was cited and followed as controlling, the court saying:

"Liability in cases of this character does not depend upon the degree of care or skill used to prevent damages, but that the liability is the same whether the damage is caused with or without negligence; the reason being that, for any physical injury or direct invasion of property rights, damages are recoverable, under the provisions of our constitution that 'no private property shall be taken or damaged for a public or private use without just compensation having been first made.' "

*Donofrio v. Seattle,* 72 Wash. 178, 129 Pac. 1094. In this case the court held that a complaint seeking injunctive relief to prevent the city from extending a fill upon private property stated a cause of action under the constitutional provision.

*Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820. In an exhaustive opinion by Judge Chadwick, most of the former cases that are applicable are reviewed. In that action, brought to recover damages to the real property of the plaintiff by reason of the grading of a city street, it appeared that, in making the slope on the fill, it extended over onto the plaintiff's property, and that the city had not obtained a right to so enter upon plaintiff's property by condemnation or otherwise. A claim for damages was filed, but it was insufficient to comply with either the statute or the city charter. Judge Chadwick, among other things, said:

"Whatever its method, the city has taken respondent's property for a public use in virtue of its sovereignty, and subject only to the limitations to be found in the constitution. When taking private property for a public use, the state acts in its sovereign capacity. [Citing cases.] It goes not as a trespasser, inspired

by selfish or unlawful motive, but as one taking without malice or intent to do wrong and presumptively for the public good. It cannot put on the cloak of a tort feasor under the statute if it would. It cannot plead a wilful wrong to defeat a just claim. . . .

"Having the right to take, a municipality, whatever its procedure or even lack of procedure, is not a wrong-doer. The remedy of the one whose property is taken is immaterial so long as it leads to compensation as provided in the constitution. The city is bound to make compensation under a compact no less formal than the constitution itself, and it cannot defeat this constitutional right by a charter provision or an ordinance, nor can the legislature take it away by any arbitrary requirement, . . .

"The action for damages for land taken without compensation is usually spoken of, and is in its nature, one of trespass; but it is not strictly so. If the state or its agent, in the prosecution of a public work, takes no more than is necessary, and prosecutes its work without negligence, it is neither a trespasser nor a tort feasor. . . .

"So it will be seen that, where the petitioner is about to take possession without condemnation, injunction is a proper remedy; where there has been a taking and the public function is being exercised, the only remedy is to take compensation. Whether we call the taking a tort, or say that the claimant can waive the tort and sue on an implied contract, it makes no difference; the law is the same. The constitutional right to compensation cannot be taken away, for the right to redress the wrong does not and cannot be made to depend upon statute law. The remedy is in the courts having jurisdiction to redress wrongs under the forms of the common law. . . .

"We hold that the right to recover compensation for property taken by a city for a public use under § 16, art. I, of the constitution, is not a claim 'sounding in tort,' within the meaning of the statute, Rem. & Bal. Code, § 7995 (P. C. 77, § 133), or a contract claim within the meaning of the charter of the city of Seattle as construed in *Postel v. Seattle, supra*."

Judge Gose vigorously dissented, saying:

"The action either sounds in tort or arises out of a contract, express or implied. If it sounds in tort, the statute governs; if it is upon contract, it is controlled by the city charter. The majority opinion rests upon the fiction that the sovereign can do no wrong. The respondent asserts that it has done a wrong and the suit is waged to redress the wrong. A property right resting upon the constitution is no more sacred than any other property right. As I read the cases, they do not support the view taken by the majority. I think that the failure of the respondent to properly present his claim precludes a recovery. Upon that ground only, I dissent."

*Provident Trust Co. v. Spokane,* 75 Wash. 217, 134 Pac. 927, strictly follows the *Kincaid* case. The injury involved was the regrading of a street so as to leave the abutting property some five or six feet higher than the re-established grade. It does not appear that there was any condemnation nor any actual taking of property.

*Casassa v. Seattle,* 75 Wash. 367, 134 Pac. 1080. This was a slide case caused by removal of lateral support in regrading certain streets. [See *Casassa v. Seattle,* 66 Wash. 146, 119 Pac. 13, being a previous appeal of the same case, for further facts.] The writer of the opinion seeks to distinguish the *Kincaid* case because there was there no antecedent condemnation. He says that *Postel v. Seattle, supra,* was overruled by the *Kincaid* case, although the improvement involved in the *Postel* case was an original grade. He says:

"The same conclusion, however, does not follow in the present case. This is neither an original grade, damage from which would be now held without injury under *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061, nor a change from an original grade, for which no condemnation had been made. In the case

now before us, the right to change the street grade, make the cut, and take land sufficient for a one to one slope, was determined and the compensation therefor assessed before the work was done. The damages now claimed resulted from the inadequacy of the plan of the improvement to protect the remaining property from sliding. The claim is not for the taking of some additional definite or definable part of the lots for making a sufficient slope, but for the removal of lateral support without providing, in the plan and execution of the work, for a retaining wall or a sufficient slope to prevent the sliding. This is clear, since the damage now claimed would have resulted, and to the same extent, had the one to one slope been entirely confined in the first instance to the street itself without any invasion or taking of appellants' property for a slope. This case is, in principle, a replica of *Hinckley v. Seattle,* 74 Wash. 101, 132 Pac. 855. There condemnation was made in advance, but the plan of the improvement resulted in damage to adjacent lots. In that case, though no mention of the fact is made in the opinion, a sufficient claim was, as the record shows, actually presented and filed."

The gist of the holding seems to be that the city was negligent in not having adopted an adequate, safe and proper plan for doing the work, and that seems to be the theory differentiating it from the *Kincaid* case, *supra.* In discussing an instruction, it is further said:

"The 'nature of the soil' and its inherent 'sliding tendencies' were the very elements which admittedly caused the slide. These were conditions which the city in planning the regrade should have taken into consideration and guarded against, either by making a greater slope or by building a retaining wall. By not taking these elements sufficiently into consideration to provide against their certain and immediate effect, the city and not the lot owners assumed the risk of the resulting slide. The plan and character of the improvement was for the city to determine. The property owner was bound to acquiesce in its plan. It could

not cast the risk of its own miscalculation upon the property owner. *Hinckley v. Seattle,* and *Kincaid v. Seattle, supra.* Owing to the inherent sliding tendency of the soil, the slide was inevitable as soon as the cut at a one to one slope was made. There was, then, a potential slide, because of the character of the soil, which became an actual slide almost immediately.''

*Jorguson v. Seattle,* 80 Wash. 126, 141 Pac. 334, is another case of the inadequacy of the city's plan. It was an action to recover for the sliding of the soil of three lots by reason of the regrade of Tenth Avenue South. The cut was made at a one to one slope upon the abutting property condemned for that slope, but the slope proved insufficient to sustain itself. A continuing slide resulted, affecting the entire locality. This is the same improvement and same resulting slide which was considered in the *Casassa* case. The court says that,

''Three questions are presented: (1) Is the filing of a claim necessary to the maintenance of an action for damages resulting from the prosecution of a public work where there has been an antecedent condemnation of lands the taking or damaging of which is contemplated by the plan of improvement? (2) Is the filing of a claim necessary in case of progressive injury and continuing damage? (3) If so, is the recovery limited to injuries which accrued within thirty days immediately prior to the filing of the claim?''

In discussing the first question, which was answered in the affirmative in the *Casassa* case, reference is made to *Kincaid v. Seattle; Provident Trust Co. v. Spokane,* and *Donofrio v. Seattle, supra,* and it is said:

''In each of these three cases, the taking or damaging was an indispensable and intentional part of the improvement, necessarily anticipated by the plan, and intended in the performance, of the work. In neither of these cases was there any antecedent condemnation

for the right to take or damage. In all of these cases, the taking or damaging fell within the express limitation of the constitution, upon the power of eminent domain, § 16, article I, inhibiting the taking or damaging of private property for public or private use without just compensation having first been made or paid into court for the owner. This provision has sole reference to such taking or damaging as is contemplated in the exercise of the power of eminent domain. It is a mere limitation upon the otherwise unlimited sovereign power to take or damage private property for public use. *State ex rel. Mountain Timber Co. v. Superior Court*, 77 Wash. 585, 137 Pac. 994. Without this constitutional limitation, the state could have delegated to the city the power to take or damage private property for public use *without compensation,* and such a taking or damaging would be no tort, nor have in it any element of tort.''

And again:

''The above mentioned provision of the constitution was never intended to apply to consequential or resultant damages not anticipated in, nor a part of, the plan of a public work. It was never intended to apply to damages resulting to private property from the negligent or wrongful use of public property. As to such damages, tortious in their inception, the injured person is remitted to his remedy on the case, as in other cases of tortious taking or injury.''

The court goes on to answer the second question, as to the necessity of filing a claim in the case of progressive and continuing damage, in the affirmative. And the third question, limiting recovery to injuries which accrued within thirty days immediately prior to the filing of the claim, also in the affirmative.

*Johanson v. Seattle*, 80 Wash. 527, 141 Pac. 1032. It appears that a contractor employed by the city in grading a public street, during the performance of his work, undermined the support and foundation of the plaintiff's lot, and did blasting in such a manner as to burst

water pipes, loosen the earth, remove the lateral support, and cause the surface of the lot in front of the house to slide into the street. The contractor was not a party to the action. In the year 1907, the council passed an ordinance for the regrading of the street, and condemnation proceedings were had under that ordinance, but plaintiff's property was more than a block from the street and was not included in the condemnation action. Judge Mount, in writing the opinion, said the action was not based upon the negligence of the city, but upon the fact that the city graded the street and thereby caused the slide, and brought the case within the rule announced in *Farnandis v. Great Northern R. Co.,* *supra.* It appears that there was an allegation that the claim was duly filed which was admitted by the answer, and therefore the court held that there was no necessity of proof. It would seem that, if the case is governed by the rule in the *Farnandis* case, no claim would have been necessary, but there is no discussion in the opinion upon that point.

*Marks v. Seattle,* 88 Wash. 61, 152 Pac. 706, was an action to recover damages caused by the removal of lateral support. A claim appears to have been filed in this case and there was reference in the pleadings to a condemnation proceeding, but such proof as was offered upon that line was withdrawn. The city seems to have raised the point that the recovery should have been confined to such damage, whether resulting from actual invasion of the property or from the slide while it was merely an approaching slide, as occurred after the filing of the claim and within thirty days immediately prior thereto. The holding seems to be that a cause of action does not accrue until the slide has actually invaded the property and that no damages accrue to the owner by reason of an approaching slide until such

invasion, though as a matter of fact the market value of the property may have been depreciated by the menace. The court says:

"It follows that the respondent here could not have been required to file a claim for damages until his lots had actually been invaded, because until then no cause of action had accrued. It further follows that any depreciation in the market value of the lots occasioned by the approach of the slide cannot be segregated from the damages ultimately resulting from the actual invasion of his property by the slide, merely because a potential, though not an actual, damage had arisen as a discernible condition prior to thirty days before the claim was filed."

*Hollenbeck v. Seattle*, 88 Wash. 322, 153 Pac. 18. It appears that a portion of the width of the street was graded under an ordinance passed in 1894. The east twenty-four feet of the street was left ungraded, and a slope extended back toward the plaintiffs' property, as they contended, for lateral support. The original plans were not introduced in evidence. In 1909, the city graded the street to its full width, and the plaintiffs contend that the city excavated so close to the property line as to cause their property to slide. The case turns upon the law pertaining to the presentation of claims and was by the trial court taken from the jury because the plaintiffs did not file claim for damages within thirty days after the slide occurred. Judge Chadwick says that it cannot be distinguished from the *Kincaid* case, and the judgment was therefore reversed.

*Egbers v. Seattle*, 90 Wash. 172, 155 Pac. 751, seems to involve the invasion of plaintiffs' property by the city in making a slope. The question of the filing of a claim is not mentioned, but the case is brought under the rule of the *Kincaid* case.

*Jacobs v. Seattle*, 93 Wash. 171, 160 Pac. 299, L. R. A.

1917B 329. Plaintiffs complained because of the erection and operation of an incinerator for the purpose of destroying city garbage adjacent to their residence property. The question involved was the sufficiency of the complaint, the lower court having sustained a demurrer. The court said:

"The first cause of action is based upon the guaranty of art. I, § 16, of the state constitution, which provides that no property shall be taken or damaged for public or private use without just compensation. The second cause of action is based upon the negligent operation of the incinerator plant in a manner which causes it to be a nuisance. Respondent's attack on the sufficiency of the complaint is founded on its contention that the city in the disposal of garbage is discharging a governmental as distinguished from a corporate duty, and hence would not be liable for resulting damages of any character."

It is said that the construction and operation of the incinerator is a lawful exercise of municipal power, but the lawfulness of the power will not warrant its exercise in such a way as to breach a constitutional right. The disposal of garbage may be a governmental function, but, conceding it to be so, the function must be exercised with due regard to constitutional limitations. The constitution is then quoted, and the court goes on to say:

"The complaint in this case sets forth the injury to the property of appellants arising from the erection, maintenance and operation of respondent's plant for the disposal of garbage on land adjoining that of the appellants, and 'that at no time has said city ever condemned plaintiffs' property nor has it ever brought any suit to establish or fix the damage to plaintiffs' property because of the erection, maintenance and operation of said incinerator, but said city has, without paying to plaintiffs, or having first fixed and ascertained by a jury, plaintiffs' damage,' so installed and operated

said incinerator as to menace and depreciate the value of their property. The complaint does not seek to charge negligence of the respondent or its employees in the performance of governmental duties, in which case the municipality might be absolved from liability. The first cause of action is founded on the higher ground of the taking or injury to property without just compensation. The authorities sustain the right of recovery in such cases."

Many cases from other jurisdictions are then considered, and the court further says:

"From the foregoing authorities it is clear that the erection and maintenance by a city of an incinerator for the burning of garbage on land adjacent to that of a private owner, and its operation so as to depreciate the value of his land and render it a menace to the health of himself and family, constitutes a damaging of private property for a public use, for which he would be entitled to compensation under the terms of Const., art. I, § 16. The allegations in the first count of appellants' complaint set forth facts sufficient to bring it within the operation of this principle, and therefore state a cause of action as against a general demurrer."

As to the second cause of action based upon negligent operation, it was held that the demurrer was properly sustained.

*Farnandis v. Seattle,* 95 Wash. 587, 164 Pac. 225, was an action to recover damages caused by removal of lateral support. Plaintiff had recovered in a previous action, and on March 13, 1915, filed a claim with the city for damages accruing within thirty days prior to the filing from another slide occurring by reason of the same regrade, and followed by bringing the second action. The first action was pleaded as *res judicata.*

"In the first action, respondents were limited under the law to the recovery of such damages as they were able to prove they had suffered within the period of thirty days prior to the date of filing the claim upon

which that action had been based, up to, and including, the date of the trial. Clearly they could not have recovered in that action for future or prospective injuries to their property.''

This case seems to throw no direct light on our problem, except that an instruction, to the effect that damages caused by slides occurring more than thirty days prior to the filing of the claim were not to be considered by the jury, was approved.

*Willett v. Seattle*, 96 Wash. 632, 165 Pac. 876, was an action to recover damages to private property caused by flooding, owing to the city putting in an inadequate culvert when it graded a street. A claim for damages was filed with the city council in which no mention of the damage by flooding by reason of the inadequate drainage was made. Another claim was filed more than a month later, still without mention of such damages. On the trial, objection was made to evidence tending to prove damage by flooding. The court said:

''Where, however, the property taken or damaged is contemplated by the plan of the work and is a necessary incident to the making of the public improvement no claim is necessary, because, strictly speaking, the property owner's action rests neither in tort nor contract. In other words, where the taking or damaging is an indispensable and integral part of the improvement, necessarily anticipated by the plan and intended in the performance of the work, no claim is necessary, because the property owner is only recovering the compensation which he would have received had the city, prior to making the improvement, brought an action in condemnation for the purpose of having the damages for the taking or damaging determined.''

The *Kincaid* case and the *Jorguson* case are cited and discussed, and the court goes on:

''In the present case, the item of damages for flooding was neither contemplated by the plan of the work

nor a necessary incident in making the improvement in
Graham street. Such damages were consequential and
resultant and, therefore, sound in tort, for which no
action could be maintained unless a claim therefor had
been filed as required by the provision of the city char-
ter above referred to."

*Aylmore v. Seattle*, 100 Wash. 515, 171 Pac. 659. It
appears that the city entered upon the plaintiffs' land
without consent, opened streets for public travel with-
out consent and without having condemned or paid for
the property taken. The court said:

"Appellants assert that the action, being one for the
recovery of compensation guaranteed by the constitu-
tion to the owner of land taken for public use, is not
barred until the defendant has acquired title to the
property by prescription. Respondent contends that
the plaintiffs, having stood by and permitted the city to
take and improve the property as portions of public
streets, are estopped from maintaining ejectment for
the recovery of the land and are restricted to an action
for damages, which action is barred either by subd. 1
of § 159 of the code, relating to actions for trespass
upon real property, or by § 165, relating to actions for
which provision is not otherwise made.

"The precise question thus presented is one of first
impression in this court. It is manifest, however, that
the action is not governed by the three-year statute.
We have repeatedly held that a municipality, in taking
private property for public use, acts in its sovereign
capacity and not as a trespasser. Having the right to
take—whatever its procedure or lack of procedure—it
is not a wrongdoer."

*Jacobs v. Seattle*, 100 Wash. 524, 171 Pac. 662, L. R.
A. 1918E 131. The incinerator case again. The court
recognizes that the law of the case, so far as it affects
our present question, was settled by the prior decision,
and the main question here involved is whether the two-
year or three-year statute of limitations should be
applied.

In *Great Northern R. Co. v. State,* 102 Wash. 348, 173 Pac. 40, plaintiff sought compensation for damage caused to its track resulting from the construction of a state highway. The highway was built on a steep hillside above the railroad track, and blasting for the highway and the dumping of material caused slides, obstructing the track and damaging it greatly. The court said:

"The plaintiff's theory is that, in inflicting the damage, the state acted in its sovereign capacity, that it was necessary for the accomplishment of a public object, and that plaintiff is entitled to just compensation under Const., art. I, § 16. The fact that the state did not condemn plaintiff's property in advance does not absolve it from liability where no negligence is charged in the performance of a governmental duty. *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820.

"The constitutional provisions must have been intended to protect all the essential elements of ownership which make property valuable. Among these elements is fundamentally the right of user, including, of course, the corresponding right of excluding others from the use. A physical interference with the land which substantially obstructs this right takes the plaintiff's property to just so great an extent as it is thereby deprived of its right. To deprive one of the use of his property is depriving him of his property, and the private injury is thereby as completely effected as if the property itself were physically taken. Accordingly it has been held that any use of land for a public purpose which inflicts an injury upon adjacent land such as would have been actionable if caused by a private owner is a taking and damaging within the meaning of the constitution. . . .

"It is contended by the state that a suit against it to recover for damages will not lie, and that the damage herein involved is not for a public use within the meaning of the constitutional provision requiring compensation. We cannot accede to this contention; for if the state could have condemned the right to inflict the neces-

sary damage or invade plaintiff's property, its failure to so condemn is not an excuse to deny plaintiff's recovery."

And again:

"It goes not as a trespasser, inspired by selfish or unlawful motive, but as one taking without malice or intent to do wrong, and presumptively for the public good. Under the statute, it cannot put on the cloak of a tort feasor if it would. It cannot plead a wilful wrong to defeat a just claim. The action for damages for land taken without compensation is usually spoken of and is in its nature one of trespass, but it is not strictly so. If the state or its agent, in the prosecution of a public work, takes no more than is necessary and prosecutes its work without negligence it is neither a trespasser nor a tort feasor. *Kincaid v. Seattle, supra.* If we should hold that the state cannot condemn the right to inflict the necessary damage in the prosecution of a public work it, in effect, would hold that the officers and contractors of the state could be enjoined from committing the damage."

*Neely v. Seattle,* 109 Wash. 266, 186 Pac. 880, was an action to recover damages caused by the overflowing of certain lands belonging to the plaintiffs, the damage being caused, it was alleged, by the negligent manner in which the city had constructed a sewer through the dike, thus causing the dike to give way during high water. While a claim was filed as to certain property, on the trial damages were sought as to three tracts not mentioned in the claim as filed, and the court in that case, following the *Casassa* case, held that damages to the tracts not specified in the notice could not be recovered.

*Pratt v. Seattle,* 111 Wash. 104, 189 Pac. 565, was an action by a taxpayer to enjoin the city from recognizing as a general indebtedness certain judgments awarding compensation for the taking and damaging of priv-

ate property in the regrade of Shilshole avenue. The judgments were entered apparently in eminent domain proceedings and payable, according to the initial ordinances, exclusively by assessments against the property which would be benefited. It was said:

"It seems to us that a recurrence to the guarantee of our constitution that, 'no private property shall be taken or damaged for public . . . use without just compensation having been first made' (section 16, art. I, constitution), renders it at once plain that the city of Seattle, when it took and damaged the private property for which compensation was awarded in the judgments rendered in the condemnation proceedings which it commenced and prosecuted in the exercise of its power of eminent domain, became unconditionally bound to the persons whose property it so took and damaged, to make compensation therefor in accordance with the judgments rendered. These private property owners were not voluntary sellers of their property rights. They entered into no voluntary contract with the city agreeing to look to any questionable source of payment for their property rights so parted with. They were bound to submit to the city's taking and damaging of their property, through the orderly procedure of condemnation. True, they were not bound to surrender possession of their property or to submit to it being damaged before actually receiving compensation therefor; but the fact that they did permit the city to actually take and damage their property, after the rendering of the condemnation judgments awarding them compensation and before they received such compensation, we are of the opinion, is not a fact which the city should be permitted to set up and take advantage of, even if it desired so to do, to avoid its full constitutional duty to make just compensation according to this mandate of our constitution."

The court cites and quotes from the *Kincaid* case, cites *State ex rel. Peel v. Clausen*, 94 Wash. 166, 162 Pac. 1, and *Jacobs v. Seattle*, 100 Wash. 524, 171 Pac.

662, L. R. A. 1918E 131, in support of its position, and further says:

"We are quite convinced that the city cannot escape liability as a general debtor owing the amount of compensation awarded to the private owners of property taken and damaged by it in the exercise of its power of eminent domain, even though in the inception of the project for which it so takes or damages private property it avowedly proclaims that payment is to be made from funds to be raised exclusively by special assessments. The city may, of course, make its intention known in the beginning that it expects to resort only to the local assessment to raise sufficient funds to pay for the necessary taking and damaging of private property, and finding that sufficient funds cannot be so raised, abandon its project; but it cannot go to the extent of actually taking and damaging the property and escape paying compensation therefor as a general indebtedness, though it may escape such a liability in the making of a physical improvement as a local improvement, where those who make the improvement voluntarily enter into contractual relations with the city, agreeing to look only to a special assessment fund."

*Conger v. Pierce County*, 116 Wash. 27, 198 Pac. 377, 18 A. L. R. 393. An action to recover damages caused by erosions as the result of the changes and improvements in the Puyallup river made by the county. While the constitutional question is touched upon, yet we find nothing in the expressions of the court which will assist in our present inquiry.

*Knapp v. Siegley*, 120 Wash. 478, 208 Pac. 13, is a lateral support case between private landowners, and holds that the constitutional provision protects the landowner's right to lateral support.

*Island Lime Co. v. Seattle*, 122 Wash. 632, 211 Pac. 285. Another slide case, where without re-examination the rule of the previous cases requiring the filing of a claim was followed and approved. Probably the ques-

tion was not re-examined because a claim had been filed in that case.

*Davis v. Seattle*, 134 Wash. 1, 235 Pac. 4, involves the removal of lateral support. Condemnation proceedings had been had, acquiring the right to regrade the streets, make a cut, and to make a one to one slope on the plaintiff's lands. After the work was completed, slides occurred. Plaintiff's property was affected by these slides in 1923, and she filed a claim for damages and instituted the action. The holding is that the question of the removal of lateral support was not involved in the condemnation suit and by the judgment in that action the city acquired no right to so remove the lateral support, though it is said that the city might have thus acquired the right to remove such support. It is there said:

"The appellant makes an elaborate argument forcefully but courteously criticizing a number of our decisions on these regrade cases where we have said that the property owners' rights were protected and controlled by our constitutional provision that ' . . . no private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, . . . .' Article I, § 16. Its argument appears to be that the constitutional provision has nothing to do with this kind of action, but that it is controlled entirely by the common law on the subject. An engaging argument has been made, but we refuse to be here drawn into the intricacies of the subject, because we are wholly unable to see that the rights of the parties to this particular case would be any different under the common law rules than under the doctrine of our cases holding that the rights of the parties are controlled by the above constitutional provision.

"It seems to be the contention of the city that its demurrer to the complaint should have been sustained for the reason that it does not allege that the regrade work

was negligently or carelessly done, and that the court erred in entering judgment in favor of the respondent because it found that the testimony failed to show any such negligence. While the testimony shows that the respondent's property was improved by buildings thereon, the court correctly found that those improvements had nothing to do with the slide; that it would have occurred had the property been unimproved. Under these circumstances, negligence is not involved. The rule is that the owner of land has the right to the lateral support from the adjoining soil and that an adjacent proprietor may not remove the earth from his property to such an extent as to withdraw that support; and if he does so he is liable, and such liability is not dependent upon the care or skill exercised by him in so doing. In other words, if one owner so interferes with or removes the soil from his own land as to deprive the adjoining owner of the natural support it previously had, and there be a slide caused thereby, he will be liable in damages without regard to negligence, because he has thereby done something to the other's damage which he had no right to do. The wrong consists in removing the soil, and not in the manner of doing the work. Negligence becomes important only where the removal of the lateral support causes the adjoining land to slide only because of the weight of the buildings thereon, and that situation is not involved in this case.''

The court then proceeds to discuss cases hereinbefore referred to, and says:

''It is said that in two or three of our previous cases we have said that negligence in a case of this character was a controlling element. It may be that we have used language which would seem to indicate that damages of the character here involved are based upon negligence, but for the most part such language was incidental to the question under decision and not meant to announce a fundamental proposition.''

The last previous case, now pending on rehearing, is *Hamm v. Seattle,* 140 Wash. 427, 249 Pac. 778. The

criticised portion of that opinion which caused a rehearing to be granted is the following:

"Complaint is made of instruction No. 15, which was as follows:

" 'Under the constitution and laws of this state, no private property may be taken or damaged, for a public or private use, without just compensation being paid therefor.'

"It is urged that the instruction was erroneous because the cause of action was one in tort for the removal of lateral support, and the constitutional provision entirely inapplicable. The objection is sound. *Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820; *Jorguson v. Seattle,* 80 Wash. 126, 141 Pac. 334.

"But we do not think that reversal should necessarily follow. A statement of law inapplicable under the facts and pleadings, but which could in no wise prejudice or mislead the jury, cannot be considered reversible error."

Comment upon this is unnecessary at this time.

Many other cases, which have, or which are thought to have, some bearing upon the question, have been examined and considered, but, as we view it, none of them requires any special mention or analysis here.

The points of divergence are comparatively few. *First:* The *Postel* case, where the constitutional rights of the property owner were not discussed and were apparently overlooked. *Second:* The *Kincaid* case, where the court attempted to re-establish the constitutional theory in line with the earlier cases, without directly overruling the *Postel* case. And *third:* The *Casassa* case and those which followed it, where a distinction was attempted to be drawn requiring a claim to be filed in certain cases thought to sound in tort, and recognizing the constitutional right in all other cases not sounding in tort. The principle is perhaps sound, but the difficulty lies in its application. It was said in the *Kincaid* case:

"When taking private property for a public use, the state acts in its sovereign capacity. [Citing cases.] It goes not as a trespasser, inspired by selfish or unlawful motive, but as one taking without malice or intent to do wrong and presumptively for the public good. It cannot put on the cloak of a tort feasor under the statute if it would. It cannot plead a wilful wrong to defeat a just claim. . . ."

Surely, therefore, the fact as to whether condemnation proceedings were had is wholly immaterial, and the classification, if one is to be made, cannot rest upon that ground. Indeed, the *Kincaid* case as clearly overrules the *Postel* case as though it had so been said in apt words, and that fact is recognized in the *Casassa* case, where it is said that the *Postel* case was so overruled. Further than that, it has since been argued (*Great Northern R. Co. v. State, supra*), as a basis for classification, not that condemnation was had, but that condemnation might have been had. We must, therefore, look further for the dividing line.

The inadequacy of the plan, as held in the *Casassa* case, is a far more logical basis for a classification, and there is ground for argument that, when the city blindly and wilfully proceeds by reason of such inadequacy of plan to take or damage private property, it is acting tortiously. But we think even this must be qualified, as, if though proceeding blindly and wilfully the city takes or damages only that which by its sovereign power it has the right to take or damage, then it would seem that it cannot plead the manner of the taking, even though in a sense tortious, in its own defense, because to do so would be to take advantage of its own wrong, which is abhorrent to well established legal principles.

We may accept the holding of the *Jorguson* case to the effect that the constitutional provision has

sole reference to such taking or damaging as is contemplated in the exercise of the power of eminent domain and is a mere limitation upon the otherwise unlimited sovereign power to take or damage private property for a public use; and yet it must follow that, whenever property is thus taken, voluntarily or involuntarily, by the sovereign state or by those to whom it has delegated this sovereign power, the courts must look only to the taking, and not to the manner in which the taking was consummated. A mere temporary interference with a private property right in the progress of the work, especially such as might have been avoided by due care, would probably be tortious only. Improper blasting, causing debris to be cast upon the adjacent property, would seem to be tortious and not a taking or damaging under the constitution, but the removal of lateral support, causing slides or any permanent invasion of private property, must be held to come within the constitutional inhibition.

The great mass of our cases, as hereinbefore reviewed, seem to so hold, and with the overruling of the *Postel* case, the only inharmony arises from the *Casassa* and the *Jorguson* cases and those which attempt to follow them. In the beginning they were a not unjustified attempt to draw a distinction which does exist, but the line drawn was too fine, and results show that it leads to confusion. So far as out of harmony with what is here said, those cases are overruled.

The trial court committed no error, and the judgment is affirmed.

Mackintosh, C. J., Askren, and Parker, JJ., concur.