[No. 28134.   Department One.   December 24, 1941.]

THE STATE OF WASHINGTON, *Appellant*, v. FRANK P. WILLIAMS *et al., Defendants,* LUCIA ROSE, *et al., Respondents.*[1]

[1]Reported in 120 P. (2d) 496.

*The Attorney General, P. H. Winston,* and *L. C. Brodbeck, Assistants,* for appellant.

*Nicholas A. Maffeo,* for respondents.

DRIVER, J.—This is an appeal from a judgment awarding compensation and damages to landowners, Lucia Rose and Frank Rose, her husband, in condemnation proceedings. The proceedings were instituted by the state, at the instance of the Washington Toll Bridge Authority, to acquire the right of way for a highway tunnel, in the city of Seattle, in connection with the construction of the Lake Washington concrete pontoon toll bridge, and to provide a suitable westerly approach for that structure.

The condemnation petition involved a considerable number of different tracts, but settlements out of court before trial were effected as to all but three of them. The instant case was separately tried to a jury. A case involving the other two tracts was tried to the court and separate judgments were entered for the amounts awarded to the respective owners. The state appealed

from both judgments. The appeal as to one of them was dismissed in this court (*State v. Williams,* 5 Wn. (2d) 419, 105 P. (2d) 723), and the opinion in the other (*State v. Williams* (No. 28135)) is reported *post* p. 16.

From maps introduced by the state and from other evidence in the record, the tunnel in question may be described as follows (the dimensions are approximations, which we deem sufficiently close for the purpose of this opinion): It consists of twin parallel bores, each 35 feet wide and 25 feet high from grade line to top limit of excavation, with an unexcavated core 27 feet wide between the bores. The tunnel extends east and west a distance of 1,446 feet, under what is commonly known as Mount Baker ridge, in a residential section of the city. There is a pronounced slope on both the east and west sides of the ridge. At its highest point, the surface of the ridge is 151 feet above the bottom, or grade line, of the tunnel.

Respondents' property consists of two lots on the westerly slope of the ridge. Near the east property line, there is a one-story and basement frame dwelling and a frame garage. The west end of the tract is about 148 feet and the west end of the house is 212 feet from the west tunnel portal. Approximately, the southerly 21 feet of the tract and the southerly 16 feet of the dwelling are directly above the north bore of the tunnel. The top of the tunnel is about 47 feet below the level of the basement floor of the house.

Prior to the trial on the question of damages, the court, on appellant's application, entered an order, in conformity with the provisions of Rem. Rev. Stat., § 894 [P. C. § 7664], granting to appellant the right to take immediate possession of and use the lands of the respondents for the purposes set forth in the condemnation petition, and adjudging that the appellant should

be bound to pay the full amount awarded by any final judgment of compensation and damages for the appropriation of such lands.

At the time of the trial, construction work was in progress. A pioneer drift had been driven through that portion of the north bore directly beneath respondents' property, and the west tunnel portal had been excavated. A ground slide had occurred on the west side of the ridge, which involved respondents' tract. Following the ground movement, their house and garage had settled about two and a half feet and had slipped horizontally southward about three feet. The dwelling was rendered uninhabitable.

A qualified engineering expert, testifying for respondents, in answer to the question "What is your opinion as to what caused the slide?" stated:

"The slide, which includes the area of this [respondents'] property within it, was caused by the excavation made at and in the vicinity of the west portal to the tunnel. That excavation removed the toe of the hill, and removing the lateral support of the hill caused this earth in this vicinity to slide toward the portal."

Another engineering expert, called by respondents, also expressed the opinion that the slide had been caused "primarily" by the west portal excavation. This testimony was not disputed. There was no contention that the weight of the buildings on respondents' tract materially contributed to the sliding or subsidence of their land. On cross-examination, each of the two expert witnesses expressed the opinion that the west portal had been excavated on a slope of about one to one, or one and one-half to one; that this steepness of the cut had started the slide; and that it would not have happened had the excavation been made on a flat enough slope. One of them testified on cross-examination that the ground formation of Mount Baker

ridge is sand and gravel on the surface with an underlying stratum of blue clay 50 to 70 feet deep. He stated that the same formation exists generally in the hills of Seattle.

On rebuttal, the state offered in evidence the standard specifications of its department of highways, with certain amendments and "special provisions written to cover the construction of the tunnel of the Lake Washington Bridge." An objection to their admission was sustained, and counsel for the state then made the following offer of proof:

"My offer of proof is to show from the contract Plans and Specifications that we were not in any manner to direct the contractor in making the excavations at the portals or direct the manner or slope upon which he should make them; that the manner and method of making the construction, in providing the tunnel entrance to the construction of the tunnel portal was a matter entirely within his own control; that the only thing that the Plans and Specifications show is the result which he must accomplish, except that they show the contents of the concrete to the amount of reinforced steel he should use, but not the manner in which he was to excavate at the portal; that the contractor selected his own method of excavation; that he excavated at a one to one slope, upon which the ground would not stand, or which at least constituted a removal of the lateral support, which caused this slide, and which is not under the control or authority of the Toll Bridge Authority; to show that none of the specifications shall be construed as attempting to control or supervise the manner or method by which the excavation shall be carried on; that the method or procedure of his use of equipment, choice of slope from which he took this material, or takes any other material, he does on his own responsibility."

The appellant assigns as error the trial court's rejection of the foregoing offer. There are other assignments of error based upon certain instructions given

by the court and upon the court's refusal to give certain instructions proposed by the appellant, but it is not necessary to give any of such assignments separate consideration, because they all relate to, and depend upon, the offer of proof. If the proffered proof was admissible, then the court erred in the giving and the refusal to give the instructions in question; but, on the other hand, if the proof was properly rejected, then there was no error with reference to the instructions.

Appellant's position seems to be this: The offer indicated that the removal of lateral support and the resultant slide affecting respondents' land was due to lack of care on the part of an independent contractor in the construction of the tunnel portal, and the proof was therefore admissible for the following reasons: First, damages for injury caused by negligence cannot be recovered by a landowner in a condemnation proceeding; second, such damages can not be recovered against the state as a damaging of property for public use for which compensation must be made under Art. I, § 16, of the state constitution; and, third, the state is not liable for injury to land caused by the negligence of an independent contractor in the construction of a public improvement.

First, it is true that, in this state, the method prescribed by law for the taking of private property for a public use is a special statutory proceeding which differs in many respects from the ordinary civil action. See Rem. Rev. Stat., § 891 [P. C. § 7661] *et seq.* When the state or other public body prosecutes such a proceeding to appropriate private property for the construction at some future time of a public improvement, naturally, it is assumed that the work will be done in a proper manner, without negligence; and the property owner is entitled only to such compensation and dam-

ages as can reasonably be foreseen as the result of the improvement constructed in that manner.

But where, as in the instant case, the public work for which private property is to be appropriated has been done before the amount of damages has been judicially assessed, then the owner is not limited to damages which could have been foreseen, but may recover all damages which come within the provision of Art. I, § 16, of the constitution, that "No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner." *Carpenter-McNeil Inv. Co. v. Spokane,* 73 Wash. 232, 131 Pac. 823; *Grosshoff v. Spokane,* 73 Wash. 681, 132 Pac. 643; *Yakima County v. Olson,* 94 Wash. 579, 162 Pac. 987. In the case last cited, this court said:

"Where, as in the case at bar, damages are assessed after the works have been constructed, we think the proper measure of gross damages is the value of the part taken, together with all damages to the remainder, whether traceable to proper or negligent construction, and regardless of the location of that part of the condemner's property which is alleged to have been the proximate cause of the damage."

Second, does the damaging of real property by the removal of lateral support, under the circumstances of the case at bar, including the proof offered by the appellant, come within the above-quoted provision of the constitution, Art. I, § 16? We think the answer to that question may be found in the leading case of *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625. There, the owners of real property sued the city of Seattle to recover for damage from slides resulting from the removal of lateral support in the regrade of certain adjacent streets. The question presented was whether this was a damaging within the contemplation of the constitution, or was of

such a tortious nature as to be actionable only after the filing of a claim against the city, as required by its charter and by statute. This court held that the damaging was in contravention of the landowner's constitutional rights, and that the filing of a claim was not required. Judge Tolman, the author of the opinion, following an opening introductory paragraph and a statement of the question presented, observed:

"Both sides cite and rely upon previous decisions of this court which they argue are decisive, and there seems to be a condition of confusion and uncertainty which requires an examination of all that has heretofore been said, with a view of plainly and clearly establishing, if that be possible, a rule by which litigants and trial courts may in future determine into which class a given case may fall."

The opinion then proceeds with a comprehensive review and analysis of the prior cases bearing upon the question under consideration. We shall not again review them here with the exception of two, which, we think, should be specially considered as an aid to the construction of the *Wong Kee Jun* case.

In *Casassa v. Seattle,* 75 Wash. 367, 134 Pac. 1080 (for a prior appeal of the same case see *Casassa v. Seattle,* 66 Wash. 146, 119 Pac. 13), the city of Seattle, in regrading one of its streets, adopted a plan which called for the cutting of the hillside on adjoining lots on a slope of one to one. The city, by condemnation, acquired the right to make the regrade in accordance with this plan, and the award of compensation to the landowners was fixed and paid on that basis. The soil of the hillside was a stratified blue clay, and, during the progress of the excavation work, it slid beyond the one to one slope, thereby causing damage to plaintiffs' lots, for which they brought suit against the city.

One item of damage which plaintiffs claimed was an amount expended in an effort to save the houses on

the lots from destruction. Upholding the trial court on that phase of the case, this court held that the item could not be recovered because it had not been included in the claim presented to the city. The gist of the holding was that the city had been negligent in adopting an inadequate, unsuitable plan of construction, and the owners of the lots could not maintain their action for damages for such negligence without having first filed a claim against the city. In this connection, we call attention to the following excerpt from the opinion:

"In the case now before us, the right to change the street grade, make the cut, and take land sufficient for a one to one slope, was determined and the compensation therefor assessed before the work was done. The damages now claimed resulted from the inadequacy of the plan of the improvement to protect the remaining property from sliding. The claim is not for the taking of some additional definite or definable part of the lots for making a sufficient slope, but for the removal of lateral support without providing, in the plan and execution of the work, for a retaining wall or a sufficient slope to prevent the sliding. This is clear, since the damage now claimed would have resulted, and to the same extent, had the one to one slope been entirely confined in the first instance to the street itself without any invasion or taking of appellants' property for a slope."

The same street regrade, with its resulting slide, which was the basis of the *Casassa* case, was also involved in *Jorguson v. Seattle*, 80 Wash. 126, 141 Pac. 334. In the latter case, however, the plaintiffs' lots did not adjoin the regraded street, but had been reached and damaged by the continuing slide which started with the excavation of the abutting lands on a one to one slope. The plaintiffs had been included in the city's condemnation suit, but only to determine the damage they would suffer by reason of interference

with access to their lots. Damage which might result from sliding was not contemplated nor litigated in the condemnation action. One of the questions presented, in the words of the opinion, was:

"Is the filing of a claim necessary to the maintenance of an action for damages resulting from the prosecution of a public work where there has been an antecedent condemnation of lands the taking or damaging of which is contemplated by the plan of improvement?"

The court then stated that this question had been answered in the affirmative by the *Casassa* case. Three prior cases which the appellant landowners contended were out of harmony with the *Casassa* decision were distinguished as follows:

"In each of these three cases, the taking or damaging was an indispensable and intentional part of the improvement, necessarily anticipated by the plan, and intended in the performance, of the work. In neither of these cases was there any antecedent condemnation for the right to take or damage. In all of these cases, the taking or damaging fell within the express limitation of the constitution, upon the power of eminent domain, § 16, article 1, inhibiting the taking or damaging of private property for public or private use without just compensation having first been made or paid into court for the owner. This provision has sole reference to such taking or damaging as is contemplated in the exercise of the power of eminent domain. It is a mere limitation upon the otherwise unlimited sovereign power to take or damage private property for public use. . . .

"The above mentioned provision of the constitution was never intended to apply to consequential or resultant damages not anticipated in, nor a part of, the plan of a public work. It was never intended to apply to damages resulting to private property from the negligent or wrongful use of public property. As to such damages, tortious in their very inception, the injured

person is remitted to his remedy on the case, as in other cases of tortious taking or injury."

In the *Wong Kee Jun* case (143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625), after an exhaustive review of the numerous prior decisions, the court quoted from *Kincaid v. Seattle*, 74 Wash. 617, 134 Pac. 504, 135 Pac. 820, as follows:

" 'When taking private property for a public use, the state acts in its sovereign capacity [citing cases]. It goes not as a trespasser, inspired by selfish or unlawful motive, but as one taking without malice or intent to do wrong and presumptively for the public good. It cannot put on the cloak of a tort feasor under the statute if it would. It cannot plead a wilful wrong to defeat a just claim. . . .' "

The court, after observing that whether or not there had been a prior condemnation proceeding before the taking or damaging, was immaterial and did not provide a sound basis for classification, then made the following comment on the *Casassa* and *Jorguson* cases:

"The inadequacy of the plan, as held in the *Casassa* case, is a far more logical basis for a classification, and there is ground for argument that, when the city blindly and wilfully proceeds by reason of such inadequacy of plan to take or damage private property, it is acting tortiously. *But we think even this must be qualified, as, if though proceeding blindly and wilfully the city takes or damages only that which by its sovereign power it has the right to take or damage, then it would seem that it cannot plead the manner of the taking, even though in a sense tortious, in its own defense, because to do so would be to take advantage of its own wrong, which is abhorrent to well established legal principles.*

"We may accept the holding of the *Jorguson* case to the effect that the constitutional provision has sole reference to such taking or damaging as is contemplated in the exercise of the power of eminent domain and is a mere limitation upon the otherwise unlimited sovereign power to take or damage private property for

a public use; and yet it must follow that, *whenever property is thus taken, voluntarily or involuntarily, by the sovereign state or by those to whom it has delegated this sovereign power, the courts must look only to the taking, and not to the manner in which the taking was consummated.* A mere temporary interference with a private property right in the progress of the work, especially such as might have been avoided by due care, would probably be tortious only. Improper blasting, causing debris to be cast upon the adjacent property, would seem to be tortious and not a taking or damaging under the constitution, *but the removal of lateral support, causing slides or any permanent invasion of private property, must be held to come within the constitutional inhibition."* (Italics ours.)

The court then concluded that "the great mass of our cases, as hereinbefore reviewed, seems to so hold"; that (*Postel v. Seattle,* 41 Wash. 432, 83 Pac. 1025, being considered as overruled) the only inharmony arises from the *Casassa* and the *Jorguson* cases and those which attempt to follow them; and that, "So far as out of harmony with what is here said, those cases are overruled."

*Wong Kee Jun* was a departmental case, but it was approved by the court *En Banc* in the rehearing of *Hamm v. Seattle,* 143 Wash. 700, 255 Pac. 655, and it has since been cited and its language quoted with approval in numerous decisions of this court which we have examined. The precise question presented here was not involved in any of them, but in none was the *Wong Kee Jun* case overruled, limited, or questioned. We here cite only the most recent of such cases. *Docksteader v. Centralia,* 3 Wn. (2d) 325, 100 P. (2d) 377; *Knapp Brick & Tile Co. v. Skagit County,* 4 Wn. (2d) 152, 102 P. (2d) 679; *Muskatell v. Seattle,* 10 Wn. (2d) 221, 116 P. (2d) 363; *Snavely v. Gold-*

*endale,* 10 Wn. (2d) 453, 117 P. (2d) 221; *Boitano v. Snohomish County,* 11 Wn. (2d) 664, 120 P. (2d) 940.

It is not necessary for us to determine to what extent *Casassa v. Seattle* has been qualified by the *Wong Kee Jun* case, because we do not have here any question of inadequate, improper, or defective plans. Assuming the plans were as stated in appellant's offer of proof, so far as the west portal of the tunnel was concerned, they merely directed the contractor to build that part of the structure, without specifying what method he should employ or on what slope he should make the excavation. It is not disputed that the slide injury to respondents' property was caused by the removal of lateral support in the making of the portal excavation, and, as to that feature of the work, there were, in effect, no plans at all.

That portion of the *Wong Kee Jun* opinion above quoted which comments on the *Jorguson* case, is squarely applicable in the instant case. Here, the state, in the exercise of its power of eminent domain, after taking possession of respondents' property under a judicial decree, constructed thereon and adjacent thereto a public improvement; and, as a direct result, lateral support was removed from respondents' land, and it was permanently damaged by slides. Under the circumstances, it is immaterial whether the damaging was voluntary or involuntary, or a damaging which necessarily and unavoidably resulted from the construction of the improvement. It was, we think, a taking or damaging which the constitution, Art. I, § 16, provides shall not be done without compensation.

Appellant's counsel seek to distinguish the *Wong Kee Jun* case. It holds, they assert, that a public body is liable under the constitutional provision not only for intentional and planned damage, but also for unintentional or involuntary damage *which is a necessary*

*consequence of the inadequacy of the plans.* In the instant case, they say the damage did not result from inadequacy of plans, but from negligence of the contractor in the selection and prosecution of the method of construction.

The rule of the *Wong Kee Jun* case does not embody, by express words or by implication, the limitation which appellant's counsel would read into it, nor does it rest upon a factual basis which would warrant any such limitation. The opening sentence of the opinion reads: "Respondents by this action seek recovery of damages to their real property, alleged to have been caused by a slide resulting from the removal of lateral support by the city in its regrade of certain adjacent streets some years before." There is no other or further factual statement in the case. It does not appear from the opinion what the city's street regrade plans were. It does not appear whether the plans were proper and adequate or otherwise, or whether the work was done in accordance with the plans, or whether the removal of lateral support and the resulting slide damage was an unavoidable consequence of the prosecution of the work in accordance with the plans. It would seem that, by the very omission of such details, the court indicated that it did not consider them of controlling importance.

■ ■ Third, there remains for consideration only appellant's final contention that the offered proof should have been accepted, because it would have enabled the appellant to advance, in contravention of respondents' claim for damages for removal of lateral support, the principle that an owner, or builder, or improver is not liable for the negligence of an independent contractor.

Since we have concluded that the injury to respondents' property, resulting from the removal of lateral

support, was a damaging within the meaning of the constitutional provision requiring compensation to be made, it would seem to follow, necessarily, that the state could not delegate to a private independent contractor the liability for such damaging any more than the state could so delegate its power of eminent domain. But be that as it may, we think the case at bar comes within a well-recognized exception to the general rule of nonliability for the negligence of an independent contractor.

One who orders the doing of work of such a character that, in the natural course of events, consequences injurious to others may reasonably be anticipated, unless precautions are taken to avoid such injury, cannot avoid liability by placing an independent contractor in charge of the work. Annotation (*Pickett v. Waldorf System,* 241 Mass. 569, 136 N. E. 64), 23 A. L. R. 1014; *Bower v. Peate,* L. R. 1 Q. B. D. 321; *Kendall v. Johnson,* 51 Wash. 477, 99 Pac. 310; *Freebury v. Chicago, M. & P. S. R. Co.,* 77 Wash. 464, 137 Pac. 1044; *Johnston v. Seattle Taxicab & Transfer Co.,* 85 Wash. 551, 148 Pac. 900; *Babcock v. Seattle School Dist. No. 1,* 168 Wash. 557, 12 P. (2d) 752; *Thompson-Cadillac Co. v. Matthews,* 173 Wash. 353, 23 P. (2d) 399.

In *Philadelphia, B. & W. R. Co. v. Karr,* 38 App. D. C. 193, 197, it was held that the work of building a railroad tunnel comes within the exception just stated. In that case, the court of appeals of the District of Columbia said:

"The construction of a railroad tunnel is highly dangerous to property above and adjacent to it. Defendant was charged with knowledge of this fact, and it could not relieve itself from exercising due care to prevent the mischief under the rule of independent contractor, by employing someone else to do the work."

In the instant case, the appellant ordered and directed that a twin-bore highway tunnel of large

dimensions be driven through a ridge, with steeply sloping sides, in the residential section of a city, the material to be excavated being generally known to consist of blue clay underlying a surface layer of sand and gravel. Obviously, such work might reasonably have been expected to endanger the lands over and near the tunnel unless suitable precautions were taken to guard against the removal of lateral and subjacent support. It was the duty of the state to see that such precautions were taken, and it can not escape liability by employing an independent contractor to do the work.

Judgment affirmed.

ROBINSON, C. J., STEINERT, MAIN, and BLAKE, JJ., concur.

